UNITED STATES, Appellee,

v.

Jose T. RIVERA, Private, U. S. Army, Appellant.

No. 29,309.

U. S. Court of Military Appeals.

June 20, 1975.

Captain Richard E. Schmidt argued the cause for Appellant, Accused. With him on the brief were Colonel Victor A. DeFiori, Major James Kucera, and Captain Michael R. Caryl.

Lieutenant Colonel Ronald M. Holdaway argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel Donald W. Hansen, Captain Joel M. Martel, and Captain Robert L. Powell.

1. Apparently, the Government's plan extended to granting each accused testimonial immunity and ordering him to testify against his co-ac-

## OPINION OF THE COURT

FLETCHER, Chief Judge:

A general court-martial convened at Fort Sam Houston, Texas, convicted the accused of attempted robbery and assault with a dangerous weapon. Intermediate reviewing authorities affirmed the findings of guilty, and we granted the accused's petition for review on several assignments of error. Our disposition of the case necessitates the consideration of only one assignment, as we reverse and order the charges dismissed.

On October 8, 1972, three men attempted to rob Specialist Five Hollingsworth while he was sleeping in his barracks. After awaking him and demanding the keys to his locker at pistol point, one of the men shot him. The group then fled the scene.

Sometime later, the accused and several others were apprehended for the crimes. During the processing of the case, the staff judge advocate recommended to the convening authority that the accused be granted testimonial immunity in order that the Government might "attempt to discover the actual participation and identity of the other people involved in the incident." He also noted that the evidence at the accused's pretrial investigation "indicated that Private Rivera may not have been the individual who fired the bullet which lodged in Private Hollingsworth's neck," and that the limited grant of immunity "does not prevent the government from trying him [Rivera] for the offenses charged as long as no information obtained from Private Rivera is used against him at his court-martial."

Acting on the recommendation of the staff judge advocate, the convening authority ordered the accused "to answer any questions relevant to the investigation of the shooting of Private (E–2) Paul A. Hollingsworth and if necessary to testify at a court-martial resulting from that investigation." The accused, in obedience to the order, made the following inculpatory statement at the pretrial investigation of similar charges preferred against one of his alleged co-actors, Private Solis: [1]

cused in their respective pretrial investigations and subsequent courts-martial. In fact, the accused's pretrial investigation was reconvened

Ausberto Torres, Carlos Esquilin, Eddie Solis and myself were at the NCO Club on 8 October 1972. Eddie said let's go and do something, let's rip someone off. We left and went down by some barracks. I gave the gun I had to Torres. Esquilin and Solis both had guns. These were .22 caliber pistols. I knew that they were going to rob but I did not intend to rob anyone. Torres, Solis and Esquilin went into the barracks. I did not go into the barracks. I told them I would wait outside. They were in the barracks about two minutes when I heard a shot.

Q: Did they run out?

A: No. I ran out first.

Q: But you just said that you did not go into the barracks?

A: What I mean is I ran first.

I do not know what they did in the barracks. They had their guns when they went into the barracks. Later we met at our barracks and Torres gave me back my gun. I put the gun in my locker and about a week and a half later Esquilin borrowed it from me. I never got the gun back. When I gave Private Torres the gun it was fully loaded, when he returned it one round had only a shell. He returned it the same night I lent it to him, when I asked him what had happened he said that he had shot someone and to keep it quiet. He also said he had shot the person by accident. I did not hear Esquilin tell Escribano that I was the one who shot the guy when they came to pick the gun up. I did not make any statement saying that I accidentally shot Private Hollingsworth. I did tell one guy in my class what happened and that I fired the gun but I was bragging. I told him I did the shooting because it made me look big, but I did not shoot Private Hollingsworth.

At the trial, defense counsel sought to have the Government demonstrate that it

on December 18, 1972, and Private Solis testified as a Government witness. He also subsequently testified against the accused at trial. *See Goldberg v. United States,* 472 F.2d 513, 516 (2nd Cir. 1973).

had obtained no evidentiary benefit from the order of immunity and accused's subsequent testimony in Solis' case. In response, trial counsel assured the court that he had not used the accused's testimony in the preparation of his case; that it was not used by the staff judge advocate in preparing his pretrial advice to the convening authority and that, in fact, the pretrial investigation in the accused's case had been completed prior to Rivera testifying against Solis. Finally, he represented that "the government has not developed any further information in this case nor has it communicated the fact that Private Rivera made such a statement to any of the prosecution witnesses, nor questioned them concerning any information contained in that statement." [2]

Based on the prosecutor's representations, the military judge found that the government had met its burden of demonstrating that it had derived no benefit from the accused's compelled statement despite the fact that its trial representatives obviously were aware of the statement's contents as was one of its principal witnesses, Private Solis. Thus, the military judge rejected the defense contention that, once the statement was obtained, the government was able to focus its investigation on the accused and it was extremely difficult for the defense to present any hard evidence that the accused's testimony had not been used, consciously or unconsciously, to shape the Government's case.

We believe that the military judge erred in his ruling and that the assertions of the trial counsel were insufficient to carry the day for the Government.

Federal judicial tribunals have extensively considered the problems inherent in the prosecution of an individual following a grant of testimonial immunity to him and his consequent compelled incrimination. In

2. It was hardly necessary for the Government to communicate the statement to its witness, Private Solis, since he was presumably present at the investigation of the charges against him and heard the accused testify.

*Murphy v. Waterfront Comm'n,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), the Court reviewed its construction of testimonial immunity statutes vis a vis the accused's right to avail himself of his privilege not to incriminate himself. In concluding that "the Federal Government must be prohibited from making any . . . use of compelled testimony and its fruits," the Court declared: [3]

> Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.

Later, in *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Court reiterated its holding in *Murphy.*[4]

> This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

Significantly, the Court also observed: [5]

> A person accorded this immunity . . . and subsequently prosecuted, is not dependent for the preservation of his rights upon the integrity and good faith of the prosecuting authorities.

■ What is required to permit a prosecution to go forward after a showing the accused has been granted testimonial immunity is something more than mere representations on the part of the Government, no matter that they were uttered in good faith and with the utmost integrity of belief. The Government must establish that its evidence had "an independent, legitimate source," *Murphy v. Waterfront Comm'n, supra* 378 U.S. at 79 n. 18, 84 S.Ct. 1594; *Kastigar v. United States, supra,* 406

U.S. at 460, 92 S.Ct. 1653. This issue "is a question of fact which requires an evidentiary hearing." *United States v. McDaniel,* 449 F.2d 832, 836–37 (8th Cir. 1971). No such evidentiary hearing was held by the military judge, who was satisfied to rely on the statements of the trial counsel. Normally, this would call only for relief in the form of a remand, but we are satisfied from the matters that do appear of record that, consciously or not, the Government did make derivative use of the accused's testimony at Private Solis' pretrial investigation. *United States v. McDaniel, supra.*

First, in requesting a grant of testimonial immunity for the accused, the staff judge advocate remarked that the evidence adduced at the investigation of the charges against the accused "indicated that Private Rivera may not have been the individual who fired the bullet which lodged in Private Hollingsworth's neck" and that it was "in the government's interest to attempt to discover the actual participation and identity of the other people involved in the incident." He concluded with the observation that the grant of immunity would not prohibit the accused's trial.

Secondly, the accused's testimony against Private Solis undoubtedly assisted in ultimately focusing the direct responsibility for the shooting on the accused and to the development of Solis' testimony against him, a strong factor in the Government's case.

Finally, it is likewise apparent that the trial counsel had read the accused's statement and was familiar with his testimony at Solis' investigation.

■ Taking up these factors inversely, the mere reading of the accused's immunized statement constitutes "a prima facie 'use' of the testimony which is prohibited by the *Murphy* exclusionary rule," and one which does not "leave 'the witness and the Federal Government in substantially the same position as if the witness had claimed

---

**3.** 378 U.S. 79 n. 18, 84 S.Ct. 1609.

**4.** *Kastigar v. United States,* 406 U.S. 441, 460, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972).

**5.** *Id.*

his privilege in the absence of a state grant of immunity.'" *United States v. McDaniel, supra* at 837.

More importantly, the staff judge advocate's comments in seeking the grant of immunity make it crystal clear that he was uncertain of the role the accused played in the actual assault on Hollingsworth and that the grant was for the express purpose of discovering the identity and extent of each accused's participation in the incident. By inducing the accused to testify against Solis, he ultimately obtained Solis as a witness against the accused and thus discovered proof that the accused actually fired the shot. We believe that even such an indirect acquisition of proof is forbidden. It cannot be used in any way to improve or perfect a case against the accused. *Kastigar v. United States, supra; Murphy v. Waterfront Comm'n, supra.* Otherwise, the privilege against self-incrimination would soon become a dead letter, for the prosecution could always secure an advance review of the accused's testimony and use it to secure other evidence of his guilt.[6]

Concluding as we do, that the Government made use of the accused's compelled statement in this case, we necessarily find that the prosecution should not have been brought. Accordingly, we reverse and order the charges dismissed.

The decision of the U.S. Army Court of Military Review is reversed, and the record of trial is returned to the Judge Advocate General of the Army. The charges are ordered dismissed.

Judge COOK and Senior Judge FERGUSON concur.

---

**6.** What we have said here makes it apparent that only the exceptional case can be tried after a grant of testimonial immunity. The burden of the Government is indeed heavy—so much so that, except in rare cases, the Department of Justice has established the policy of avoiding prosecution of immunized witnesses as to matters they disclose. Department of Justice Memorandum No. 595, Supplement I, September 2, 1971 and Supplement 2, June 9, 1972.