## UNITED STATES

### v.

**Senior Airman James T. GARDNER, FR 523–04–4252, United States Air Force.**

#### ACM S26286.

U.S. Air Force Court of Military Review.

Sentence Adjudged 6 Dec. 1983.

Decided 13 June 1984.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Captain Timothy J. Malloy.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Lieutenant Colonel Andrew J. Adams, Jr.

Before FORAY, SNYDER, and O'HAIR, Appellate Military Judges.

## DECISION

SNYDER, Judge:

Appellate defense counsel invite our attention to the military judge's ruling denying trial defense counsel's motion to dismiss the charge and specifications because of an alleged improper use of the accused's immunized testimony.[1] Finding no error, we affirm.

A review of the salient facts is necessary to place the issue in perspective.[2] The charge against the accused was referred for trial and served on 25 October 1983. Trial was originally scheduled for 15 November 1983. However, as a result of a defense delay of a companion case being granted, the Government requested a delay of the accused's case until 5 December 1983 for reasons of judicial economy. At the time the delay was requested, the Government was fully prepared to proceed with the accused's case as originally scheduled.

Lieutenant G was appointed assistant trial counsel for the accused's case on 24 October 1983. He was also the Government's representative at the initial Article 32 investigation of *United States v. Wilkerson*, which opened in late October 1983. Because a number of key witnesses in the latter case asserted their right against self-incrimination, it was necessary to obtain testimonial immunity for them. Lt G drafted the messages requesting the grant of testimonial immunity. The accused was among those for whom testimonial immunity was requested and received.

When the *Wilkerson* Article 32 investigation reopened, Lt G was still the government representative. The accused's immunized testimony was approximately one hour long, with approximately half of the

---

1. Contrary to his pleas, the accused was convicted of wrongful use and distribution of marijuana. His sentence extends to a bad conduct discharge, confinement at hard labor for three months, and accessory penalties.

2. The military judge made exhaustive findings of fact. We present only those necessary for our disposition. However, we specifically find the military judge's findings amply supported by the record and accept *all* of his findings of fact.

testimony consisting of direct examination conducted by Lt G. The only difference between the accused's testimony at the *Wilkerson* Article 32 and the information already known to the Government, was the number of times the accused and Wilkerson supposedly used marijuana together. The number revealed at the Article 32 was approximately one-third less than that given by the accused in a pretrial statement. The only mention Lt G made of the accused's immunized testimony was a comment to the staff judge advocate that the accused's testimony was consistent with his pretrial statement and that he was nervous.

Lt G proofread the transcript of the accused's testimony on 4 December 1983. The transcript was then sealed and placed under lock until opened during the litigation of trial defense counsel's motion. No one assigned to the staff judge advocate's office other than Lt G, the court reporter, and one other legal technician who copied and sealed the transcript, had access to the transcript.

Captain C, the appointed trial counsel for the accused's trial, arrived on 2 December 1983 while the *Wilkerson* Article 32 was in progress. Lt G's preparation for the accused's trial was based on an Air Force Office of Special Investigations (OSI) report of investigation, dated 1 September 1983, and witness interviews. The report of investigation included an oral statement by the accused admitting to his involvement with illegal drugs. It also contained the names and statements of the witnesses to be called at the accused's trial.

Lt G had interviewed all anticipated witnesses prior to the delay of the accused's trial. He reinterviewed them after Capt C's arrival. However, Capt C was in and out of Lt G's office during the subsequent interviews, and did not really participate. Lt G did not make any mention of the accused's immunized testimony to Capt C; likewise, Capt C did not inquire of the accused's immunized testimony.

Lt G testified that the accused's immunized testimony had no impact whatsoever on his trial preparation or tactics. In his opinion, nothing of significance flowed from the accused's testimony. He was able to explain fully the markings he made on his notes, which were spaced over two legal size pages. Lt G stated that the testimony did not alter his concept of the accused's case, cause him to call additional witnesses, influence him in interviewing the witnesses, or impact him in any other manner.

Trial defense counsel argued that Lt G's involvement with the *Wilkerson* Article 32 and as assistant trial counsel on the accused's case amounted to a tainted use of the accused's immunized testimony which could not possibly be attenuated. In asserting that position, he relied on the following comment in *United States v. Rivera*, 1 M.J. 107, 111 n. 6 (C.M.A.1975): "[O]nly the exceptional case can be tried after a grant of testimonial immunity."

The military judge concluded that the Government carried its burden of establishing a legitimate and wholly independent source for its evidence, and that it had not and would not make any derivative use of the accused's immunized testimony. *United States v. Whitehead*, 5 M.J. 294 (C.M.A. 1978); *United States v. Rivera, supra.* Additionally, the trial judge disqualified Lt G from further participation in the case, directed his witness interview notes sealed, and ordered him to have no contact with Capt C for the duration of the accused's trial.

I

For the reasons stated *infra,* we hold that the military judge properly ruled that the Government discharged its burden of proving it did not *use* the accused's immunized testimony in any way, and that its evidence was derived from a legitimate, wholly independent source.

■ The threshold test an accused must meet to raise the issue of improper use of immunized testimony is well established. All an accused need do is demonstrate that he gave testimony under immunity on mat-

ters related to his own prosecution. Once the issue is raised, the prosecution has the burden of

> showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.

*Murphy v. Waterfront Comm'n*, 378 U.S. 52, 79 n. 18, 84 S.Ct. 1594, 1609 n. 18, 12 L.Ed.2d 678, 695 (1964). The Supreme Court provided further guidance on this issue in *Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212, 226 (1972), where the Court defined the Government's duty as follows:

> This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

The requirements of *Murphy* and *Kastigar* were ruled applicable to the military by *United States v. Rivera, supra.* Whether the Government's evidence is untainted and independent is a question of fact which must be resolved at an evidentiary hearing. *Kastigar v. United States; Murphy v. Waterfront Comm'n; United States v. Whitehead; United States v. Rivera*, all *supra.*[3]

■ Since a grant of testimonial immunity overrides an accused's assertion of the right against self-incrimination, it must be co-extensive with the right against self-incrimination in order to insure protection of that right. To insure this protection, the Government is barred from making improper use of immunized testimony. *Kastigar v. United States, supra.*

■ The military judge in the instant case conducted a full hearing on the issue prior to making his findings of fact and conclusions of law. *United States v. Whitehead; United States v. Rivera,* both *supra.* As mentioned, the Government was in possession of a completed report of investigation which included an admission of the accused and statements of corroborating witnesses. This was the evidence with which the Government was prepared to go to trial prior to the accused's immunized testimony.

As did the trial judge, we find as a matter of fact, and hold that the Government's evidence against the accused was independent of the accused's immunized testimony at the *Wilkerson* Article 32.

## II

■ Although the Government may possess evidence independent of an accused's immunized testimony, the *Kastigar* standard requires that the Government nonetheless demonstrate that its independent evidence is not tainted by any *derivative use* of the immunized testimony. Therefore, having determined the Government's evidence was independent, we must now determine whether that evidence was tainted by an improper use of the accused's immunized testimony.

Lt G not only had access to the accused's immunized testimony, he conducted the direct examination of the accused which resulted in the testimony. That fact, combined with Lt G's status as assistant trial counsel for the accused's trial, raises the question of whether his involvement constitutes an improper use and, if so, did that "use" vitiate the Government's ability to continue the prosecution? This question includes the issue of whether mere access to immunized testimony constitutes a *per se* taint. We hold that it does not.

In *Kastigar*, the Supreme Court did not set forth a detailed list of improper uses of compelled testimony or specifically prohibit access to compelled testimony. The only areas specifically referenced were using compelled testimony as an "investigatory lead," or to focus the investigation on a witness.

---

**3.** The applicable precedents require that the government meet its burden by means other than mere assertions of good faith. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *United States v. Whitehead*, 5 M.J. 294 (C.M.A.1978); *United States v. Rivera*, 1 M.J. 107 (C.M.A.1975).

This total prohibition on use provides a comprehensive safeguard, barring the use of compelled testimony as an "investigatory lead," and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures.

*Kastigar v. United States, supra,* at 460, 92 S.Ct. at 1665. The lower courts, however, applied broad definitions to those two areas.

In one of the earlier cases applying *Kastigar,* the Eighth Circuit looked past the Government's tangible evidence, its independent source notwithstanding, and included the possible subjective impact on a prosecutor of reading immunized testimony. *United States v. McDaniel,* 482 F.2d 305 (8th Cir.1973) (*McDaniel II*).

*McDaniel II* deemed possible impermissible uses to also include deciding to initiate prosecution, refusing to plea bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy. Thus, the thesis of *per se* taint was born.[4]

In *McDaniel II,* the prosecutor read the defendant's immunized testimony given to a federal grand jury. He did not know the defendant's testimony was immunized. The testimony consumed some three volumes. The Court of Appeals agreed fully with the trial court that the Government had proved that its evidence was obtained independently of the immunized testimony. However, because the prosecutor had read the immunized testimony, and because of the sheer volume of the testimony, the Court concluded that the Government had an *insurmountable* task in discharging the heavy burden of proof imposed by *Kastigar* because of the *immeasurable effect* of the prosecutor reading the immunized testimony. *United States v. McDaniel, supra.* The inescapable conclusion was that access to immunized testimony would, at least under those circumstances, void the prosecution.

The Court of Military Appeals concluded, as did *McDaniel I, United States v. McDaniel,* 449 F.2d 832 (8th Cir.1971), *cert. denied,* 405 U.S. 992, 92 S.Ct. 1264, 31 L.Ed.2d 460 (1972), that reading immunized testimony constitutes a prima facie use of the testimony. *United States v. Rivera, supra.* In *Rivera,* however, there was clearly a substantive use other than merely reading the immunized testimony; reading the immunized testimony provided the Government its key investigative lead.

The Army Court of Military Review faced the issue in *United States v. Eastman,* 2 M.J. 417 (A.C.M.R.1975). In *Eastman,* the Court stated that reversal is required where the prosecutor reads immune testimony in connection with subsequent criminal proceedings. The Court specifically reversed because personnel in the accused's prosecutorial chain read his immunized testimony. *United States v. Eastman, supra,* at 419. *Eastman* clearly applied a *per se* rule of taint where the prosecution merely reads immunized testimony of the accused.[5]

---

**4.** *McDaniel I, United States v. McDaniel,* 449 F.2d 832 (8th Cir.1971), *cert. denied,* 405 U.S. 992, 92 S.Ct. 1264, 31 L.Ed.2d 460 (1972) implicitly accepted the trial court's conclusion that merely seeing the transcript was a prima facie use of immunized data which violated the Fifth Amendment. The only reason the trial court was reversed was because it erroneously dismissed the case without affording the Government an evidentiary hearing. Due to an overly restrictive interpretation of *Murphy v. Waterfront Comm'n, supra,* the hearing was restricted to determining whether the defendant's immunized testimony related to the subject matter of his indictment. This restriction clearly implied acceptance of the trial court's view of the effect of reading the immunized testimony. In the interim, however, *Kastigar v. United States, supra,* provided the Government with the right to prove that no improper use was made of immunized testimony. Thus, the necessity for *McDaniel II, United States v. McDaniel,* 482 F.2d 305 (8th Cir.1973).

**5.** *United States v. Eastman,* 2 M.J. 417 (A.C.M.R. 1975), cited *McDaniel II, supra,* but primarily relied on *United States v. Dornau,* 359 F.Supp. 684 (S.D.N.Y.1973). In *Dornau,* the prosecutor read the defendant's immunized testimony prior to presenting any evidence to the grand jury. There were 50 places where he highlighted questions and answers. Because of a four year lapse, the prosecutor could not explain his markings on the transcript. Although the Court

We do not believe that *Kastigar* and it progeny dictate such a *per se* rule and decline to so hold. First, the Army Court of Military Review apparently *sub silentio* refuted *Eastman* in a subsequent case. In *United States v. Daley,* 3 M.J. 541 (A.C.M. R.1977), the Government read the accused's immunized testimony given in another case and learned of uncharged misconduct by the accused. It used the uncharged misconduct to impeach the accused at his own trial. While reversing for improper use of immunized testimony, the Court noted the absence of an effort by the Government to prove an independent source for the improper evidence. Additionally, *Eastman* was not cited.

Second, in applying *Kastigar,* the Court of Military Appeals did not mandate a *per se* rule, but commented that "a mere reading of the immunized testimony constitutes a *'prima facie use'* of the testimony which is prohibited by the *Murphy* exclusionary rule." *United States v. Rivera, supra,* 1 M.J. at 110 (emphasis added). A prima facie case is always subject to rebuttal. Additionally, the key factor in *Rivera* was that reading the accused's immunized testimony enabled the Government to focus its investigation on the accused and away from the previous prime suspect.[6]

Third, although the Eighth Circuit has not expressly repudiated *McDaniel II,* it has limited it to its unique facts.[7] The prevailing rule of the circuit now appears to be that while reading immunized testimony of a defendant will increase the Government's burden, it does not render it insurmountable. *United States v. Barker,* 542 F.2d 479 (8th Cir.1976); *United States v. First Western State Bank of Minot, North Dakota,* 491 F.2d 780 (8th Cir.), *cert. denied,* 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 49 (1974). Other circuits have also limited *McDaniel II's* holding to its facts. *See United States v. Pantone,* 634 F.2d 716 (3d Cir.1980); *United States v. Catalano,* 491 F.2d 268 (2d Cir.), *cert. denied,* 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 49 (1974); *United States v. Romano,* 583 F.2d 1 (1st Cir.1978); *United States v. Bianco,* 534 F.2d 501 (2d Cir.), *cert. denied,* 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976); *United States v. Bianco, supra; United States v. Jones,* 542 F.2d 186, 199 n. 24 (4th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375, 376 (1976); *United States v. DeDiego,* 511 F.2d 818 (D.C.Cir. 1975).

Accordingly, we hold that Lt G's access to and knowledge of the accused's immunized testimony did not *ipso facto* preclude the Government from proving that it did not use the accused's immunized testimony, either directly or indirectly, and that its evidence was from independent sources.

### III

Although reading the accused's immunized testimony does not *ipso facto* vitiate

agreed that the Government's evidence was derived independently of the immunized testimony, it concluded that it could not speculate as to the effect that the reading of the transcript might have had on the conduct and thinking processes of the prosecutor. *United States v. Dornau, supra,* 687. The Court of Appeals reversed because the trial court erroneously concluded that the Bankruptcy Act of 1969, 52 Stat. 847, conferred derivative as well as use immunity. However, while reserving judgment on the issue of whether the prosecutor's reading of the immunized testimony was, in fact unlawful, it expressly stated that a different United States Attorney could have sought an indictment from a grand jury other than the one who heard the defendant's immunized testimony. *United States v. Dornau,* 491 F.2d 473 (2d Cir.), *cert. denied,* 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974).

6. In *United States v. Whitehead,* 5 M.J. 294 (C.M. A.1975), the Court noted the absence of indicia of any derivative use of the immunized testimony and remanded for an evidentiary hearing on the issue of an independent source. Although access to the immunized testimony may be implied from the dissenting opinion, the absence of the relevant facts renders it difficult to determine whether there had been access. *United States v. Whitehead, supra,* (Cook, J., dissenting).

7. The main fact is that the prosecutor was not aware·he was reading immunized testimony. Therefore, he saw no need to, and probably did not, take precaution to separate information gleaned from the voluminous transcript from information obtained via independent investigation. Another factor frequently stressed is that the issue was not litigated until after the trial of the case.

the proceedings, it may render it more difficult for the Government to discharge its heavy burden to affirmatively demonstrate that its evidence is independent and untainted. Therefore, the fact that Lt G knew the contents of the accused's testimony is a factor to be weighed in determining if the Government discharged its burden. *United States v. Whitehead; United States v. Rivera,* both *supra.*[8]

## IV

We now apply these standards to the instant case. As mentioned, the Government's evidence was clearly derived from sources independent of the accused's immunized testimony. A completed report of investigation which included admissions of the accused was in existence well before the accused testified at the *Wilkerson* Article 32. The Government did not garner any additional witnesses via the accused's immunized testimony.

The Government discharged its heavy burden by proving conclusively it did not make any use of the accused's testimony. Lt G was fully prepared for the accused's trial prior to the immunized testimony, and he was able to explain all of his notes relating to the accused's immunized testimony. His testimony also established that the accused's immunized testimony did not impact his planned trial tactics. Thus, there was little room for speculation on potential subjective impact. *Cf. United States v. McDaniel, supra; United States v. Dornau,* 359 F.Supp. 684 (S.D.N.Y.1973).

By disqualifying Lt G from further participation with the case and ordering his witness interview notes sealed, the trial judge effectively removed any "taint" which may have existed via Lt G.[9] Trial counsel requiring recesses in order to interview witnesses is an indication that he had not benefitted from Lt G's earlier interviews of those witnesses.

Consequently, we find no violation of the accused's right against self-incrimination.[10] Accordingly, the findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, and O'HAIR, Judge, concur.

---

**8.** The point in time at which the immunized testimony is read may also impact the degree to which the difficulty is increased. *See, e.g., United States v. Barker,* 542 F.2d 479 (8th Cir.1976); *United States v. Rice,* 421 F.Supp. 871 (E.D.Ill. 1976).

**9.** We reserve judgment on whether disqualification of a trial or assistant trial counsel who reads immunized testimony is required in all instances. *See United States v. Pantone,* 634 F.2d 716 (3d Cir.1980); *United States v. Catalano,* 491 F.2d 268 (2d Cir.), *cert. denied,* 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974). However, the military judge clearly did not abuse his discretion in disqualifying Lt G from further participation.

**10.** It is axiomatic that the ideal situation is to dispose of an accused's trial *prior* to giving immunized testimony. Should the situation dictate an accused giving immunized testimony prior to his own trial, the staff judge advocate concerned will be well advised to exercise precise compartmentalization among any of his assigned judge advocates involved with the case. Even then, the better practice will be to transfer the accused's case to another convening authority. Caution should always be exercised to avoid using an Article 32 investigating officer who heard an accused's immunized testimony. *See United States v. Hinton,* 543 F.2d 1002 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976).