UNITED STATES

v.

**Staff Sergeant Ricky L. LUCAS, FR 422–70–8595, United States Air Force.**

ACM 24465.

U.S. Air Force Court of Military Review.

Sentence Adjudged 13 April 1984.

Decided 21 Dec. 1984.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Major Conrad C. Baldwin, Jr.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Major Kevin

L. Daugherty, and Lieutenant Colonel Donal F. Hartman.

Before FORAY, SNYDER and O'HAIR, Appellate Military Judges.

## DECISION

SNYDER, Judge:

Pursuant to mixed pleas, the accused was convicted by a military judge sitting as a general court-martial of possession, use, and distribution of marijuana and cocaine. The only offense contested by the accused was one specification of distributing cocaine. His sentence extends to a dishonorable discharge, confinement at hard labor for 32 months, and accessory penalties. He has submitted three assignments of error for our consideration. Finding no error prejudicial to the substantial rights of the accused, and finding no manifest miscarriage of justice, we affirm.

An investigation of illicit drug activities in and around Moody Air Force Base, Georgia, identified the accused as a suspect. He was interviewed by Special Agent Law of the Air Force Office of Special Investigations (OSI) on 13 October 1983. During that interview, the accused admitted to his illicit possession, use, and distribution of marijuana, and his possession and use of cocaine. In addition to executing a written confession, the accused agreed to cooperate with OSI in identifying others involved with drug abuse activities.

The accused apparently extended his cooperation without benefit of any type of immunity until 17 November 1983. It appears that he was involved as a witness in *United States v. Aea* when he requested immunity prior to providing further cooperation. The Commander, Ninth Air Force, granted testimonial immunity on 17 November 1983.

Charges were preferred against the accused on 12 January 1984, investigated pursuant to Article 32 on 20 January 1984, and referred for trial by general court-martial on 25 February 1984. His trial took place on 12 and 13 April 1984. The trial counsel, Captain S, was also the trial counsel in *United States v. Aea*. As a result of these events, one of the assignments of error is that the accused was denied a fair trial by virtue of trial counsel's involvement in *Aea*, and the "use" he made of the accused's immunized testimony in the accused's trial.

After reviewing the assignments of error and the Government's reply, we granted oral argument and specified the following issue:

WHETHER THE ISSUE OF IMPROPER USE OF IMMUNIZED TESTIMONY MAY BE WAIVED UNDER THE PROVISIONS OF MIL.R.EVID. 103(a); OR, IS THE ISSUE SUBJECT TO THE PROVISIONS OF MIL.R.EVID. 103(d).

### I

The key salient fact of this case is that trial defense counsel did not raise the issue at trial. Consequently, there was no evidentiary hearing at which the Government could have endeavored to demonstrate that its evidence was independent of and untainted by the accused's immunized testimony. *See United States v. Whitehead,* 5 M.J. 294 (C.M.A.1978); *United States v. Rivera,* 1 M.J. 107 (C.M.A.1975). Thus, the issue is being raised for the first time on appeal.

Initially, we note that there was not anything at trial which should have put the military judge on notice that an evidentiary hearing was in order. *Cf. United States v. Whitehead, supra,* n. 9 and 11. The references to the accused having testified in *United States v. Aea* were vague and cryptic, and there was no indication that he had testified pursuant to immunity.

It was in *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), that the Supreme Court promulgated the threshold test for raising the issue of derivative use of immunized testimony. All an accused need do is *"demonstrate* that he gave testimony under immunity on matters related to his own prosecution." *Murphy v. Waterfront Comm'n, supra,* 378 U.S. at 79 n. 18, 84

S.Ct. at 1609 n. 18, 12 L.Ed.2d 695 n. 18. Once that is done, the Government must affirmatively show that its evidence is untainted and independent of the immunized testimony. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Murphy v. Waterfront Comm'n, supra; United States v. Rivera*, 1 M.J. 107 (C.M.A.1975); *United States v. Gardner*, 18 M.J. 612 (A.F.C.M.R.), *pet. granted*, 19 M.J. —— (1984).

■ For our purposes, the key word is "demonstrate." Appellate defense counsel are well aware of their quandry; as a result, they argue that the demonstration need not occur in the courtroom. Their argument urges that the chain of command's awareness of the accused's previous grant of testimonial immunity prior to referring the case to trial satisfies the demonstration requirement, and that the Government's burden, in effect, exists prior to entering the courtroom.

The end result of this argument, notwithstanding appellate defense counsel's refusal to concede such, is that the *Murphy/Kastigar* rule would become self-executing. We reject this argument and hold that the issue must be raised at the trial level by defense counsel in order to key the Government's burden.

The very wording of the test leads to the conclusion that the defense must raise the issue in order to pit the Government against its heavy burden. If there is any uncertainty after reading the threshold test, it is dispelled by the concurring opinion in *Murphy* and subsequent explanation in *Kastigar v. United States, supra*. Mr. Justice White elaborated on the test promulgated in *Murphy v. Waterfront Comm'n*, and emphasized its similarity to other constitutional violations. He stated as follows:

> As in the analogous search and seizure and wiretap cases where the burden of proof is on the Government once the defendant establishes the unlawful

search and wiretap, [citations omitted] *once a defendant demonstrates* that he has testified ... in exchange for immunity ... the Government *can be put to show* that its evidence is not tainted.... (Emphasis added).

*Murphy v. Waterfront Comm'n, supra*, 378 U.S. at 103, 84 S.Ct. at 1616 (White, J., concurring).

In *Kastigar*, the Court chose to use the coerced confession rule as its analogy, but it retained the same threshold by stating as follows:

> *One raising a claim under this statute need only show* that he testified under a grant of immunity in order to *shift* to the Government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources. (Emphasis added).

*Kastigar v. United States, supra*, 406 U.S. at 461–462, 92 S.Ct. at 1665. The Court emphasized the extreme advantage enjoyed by a previously immunized defendant by advising that unlike those who claim a confession was coerced, the immunized defendant need not prove his testimony was used. All he need do is *claim* that it was.[1]

It is more than fair to infer that the Supreme Court was aware that the Government would know before trial that the defendant had previously testified under immunity. Nevertheless it chose to use terms such as "the defendant must demonstrate," and "put the Government to show," and "shift to the Government." It would have been quite simple for the Court to instruct that the Government will put the trial court on notice of prior immunized testimony in all cases. Not having done so, we must conclude that the defense must at least inform the trial court of prior immunized testimony by the accused. In adopting the rule for trials by court-martial, the Court of Military Appeals did not indicate a stricter standard. *See United States v.*

1. In military practice the burden of proof is always on the prosecution, even on motions to suppress. However, the defense is still required to key the burden via a motion to suppress or other objection. Mil.R.Evid. 304(d).

*Whitehead; United States v. Rivera,* both *supra.*

■ Appellate defense counsel, however, urge that the issue is one of constitutional dimension; and, as such, it may be raised for the first time on appeal. We disagree.

■ A constitutional right may be waived for appellate review if not raised at the proper time. *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 143, 87 S.Ct. 1975, 1985, 18 L.Ed.2d 1094, 1104 (1966); *United States v. Sloan,* 22 U.S.C.M.A. 587, 48 C.M.R. 211 (1974). This is especially so in the face of a guilty plea which admits the facts on which the constitutional right claimed to be violated is based.[2] *United States v. Hamil,* 15 U.S.C.M.A. 110, 35 C.M.R. 82 (1964); *United States v. Leong,* 47 C.M.R. 464 (A.F.C.M.R.), *pet. denied* (1973); *see United States v. Stewart,* 20 U.S.C.M.A. 272, 43 C.M.R. 112, 114 (1971).

■ The prohibition against the use of immunized testimony is co-extensive with the right against self-incrimination. *Kastigar v. United States; United States v. Rivera,* both *supra.* As such, "Immunity must be as broad as, but not harmfully and wastefully broader than the privilege against self-incrimination." *Murphy v. Waterfront Comm'n, supra,* 378 U.S. at 107, 84 S.Ct. at 1618 (White, J., concurring). Like other constitutional violations, *e.g.,* improper searches, a violation of the right against self-incrimination may be waived for appellate review by a failure to object. *United States v. Gross,* 14 U.S.C.M.A. 660, 34 C.M.R. 440 (1964); *United States v. Dial,* 9 U.S.C.M.A. 700, 26 C.M.R. 480 (1958); *see United States v. Caiola,* 18 U.S.C.M.A. 336, 40 C.M.R. 48 (1969). The same rule holds true for objections to derivative evidence. *See United States v. Dial, supra.* If an objection based on a violation of the right against self-incrimination and derivative evidence therefrom is not inter-

posed at trial, it is waived. Mil.R.Evid. 304(d)(2), and (e).

Unless the Court of Military Appeals clearly adopts or imposes a stricter standard on courts-martial,[3] our review of the precedents convinces us that the issue must be raised by the defense. Having failed to do so in the instant case, the issue may be waived under M.R.E. 103(a).

## II

■ We now consider whether we should take action under M.R.E. 103(d), the absence of an objection notwithstanding. Rule 103(d) states as follows:

> *Plain error.* Nothing in this rule precludes taking notice of plain errors that materially prejudice substantial rights although they were not brought to the attention of the military judge.

The plain error rule is an exceptional remedial measure which should be used only in exceptional circumstances to prevent great miscarriages of justice. Thus, courts must exercise restraint in using it. *United States v. Bolden,* 16 M.J. 722 (A.F.C.M.R. 1983), and cases cited therein.

Appellate defense counsel argued impassionately that this accused was denied his due process rights to a fair trial in all respects. Appellate defense counsel repeatedly urged that the instant case is a clear example of the Government "having its cake and eating it too." The justification constantly alluded to was the ubiquitous involvement of trial counsel, Captain S. Considering our adversary criminal system of justice, appellate defense counsel's indignation is somewhat understandable. As a substantive matter, however, the facts just do not support their premise that the accused was denied a fair trial.

Initially, we do not speculate what subjective impact the accused's immunized testimony had on trial counsel, for that is a

---

**2.** As mentioned, the accused pled guilty to all but one of the charged offenses.

**3.** *United States v. Gardner,* 18 M.J. 612 (A.F.C.M.R.), *pet. granted,* 19 M.J. —— (1984) is presently

pending before the Court of Military Appeals. Until its decision, however, we will adhere to precedents presently applicable.

proper matter for an evidentiary hearing.[4] Since we are assessing for plain error, we look to the record.

■ In order for appellate defense counsel's argument to have substance, one must ignore the fact that the Government had marshalled a substantial case against the accused prior to the grant of testimonial immunity. Therefore, this is not a case where the Government blatantly used the power of testimonial immunity as an investigative tool to sift through suspects. *See United States v. Rivera, supra.* If so, the case could very well rise to the level of plain error. *United States v. Bolden, supra.* Likewise, there is no indication that the "subjective use" by trial counsel, via his presence, intimidated the accused into pleading guilty or from testifying in his own behalf.

Prior to the accused's request for and the grant of testimonial immunity, he had tendered his cooperation in exchange for nothing more than the hope for leniency, because he knew the Government "had the goods on him." We view that factor as the moving force behind his guilty plea rather than his having testified under immunity. Second, the accused's testimony at trial tracked consistently with his confession. He steadfastly denied knowing that Aea was going to Fort Lauderdale, Florida to procure cocaine until after the trip was accomplished.[5] Consequently, it does not appear that the accused was intimidated by the knowledge that Captain S had taken his testimony at Aea's trial as well as having interviewed him, thereby giving the Government an advantage it would not have otherwise enjoyed.[6]

As mentioned, the accused was represented by counsel through this sequence of events. We have good reason to infer that trial defense counsel was knowledgeable of the ramifications of his client testifying pursuant to a grant of testimonial immunity. In fact, his advice to the accused was to exercise caution even in the face of the grant of testimonial immunity. During his testimony, the accused stated as follows:

A. I had a conference with my attorney and he advised me not to say anything I hadn't already said.

Q. ... When was this conference...?

A. It was around the 15th of November 1983.

Having weighed all of these factors, we find that this case fails to rise to the level of plain error which materially prejudiced the substantial rights of the accused. To make it perfectly clear, we *do not condone* the manner in which the accused's case was handled. Nonetheless, our review of the record leaves us convinced that the accused was not denied a fair trial; *ergo,* relief under M.R.E. 103(d) is not appropriate.

There has been a marked increase in the use of immunized testimony since *United*

---

**4.** Appellate government counsel's Motion For Leave To File Affidavit is hereby DENIED.

**5.** The Government's theory on this charge of distributing cocaine was that the accused aided and abetted Aea's trip to Fort Lauderdale, Florida to procure cocaine for distribution back at Lowndes County, Georgia. Therefore, if the accused's denial of knowledge as to Aea's purpose for the trip is believed, he could not have aided and abetted.

**6.** Appellate defense counsel also averred that the trial counsel, Captain S, was disqualified to act in the accused's trial as a result of his involvement with handling the accused's immunized testimony in *United States v. Aea,* and that Captain S had an affirmative duty to disclose his disqualification. The argument assumes that Captain S was, in fact, disqualified, that he knew or should have known he was disqualified, and his failure to inform the court substantially prejudiced the accused. Trial defense counsel was fully aware of Captain S' involvement, and raised no objection to his acting as trial counsel. Second, as the precedents presently stand, there is no *per se* rule of disqualification for one who has had access to immunized testimony, although that may be one way of removing a possible taint. *See United States v. Gardner, supra* n. 9. Third, the accused was represented by his own counsel; thus, he was not misled into possibly concluding that he could safely divulge confidences to Captain S. Under these circumstances, there is no need to disregard the failure to object. *But see United States v. Stringer,* 4 U.S.C.M.A. 494, 16 C.M.R. 68 (1954); *United States v. Fowler,* 6 M.J. 501 (A.F.C.M.R.1978).

*States v. Newman*, 14 M.J. 474 (C.M.A. 1983). Consequently, it is imperative that staff judge advocates, especially those to general court-martial convening authorities, be completely attuned to the ramifications of granting testimonial immunity to a potential accused prior to that accused's own trial. All concerned must realize that the grant of testimonial immunity will completely change the complexion of the immunized witness' subsequent trial, for much will be required of the Government if the issue is raised.

We are disturbed by the apparent unawareness of those responsible for administering the instant case. The instant case was tried prior to our decision in *United States v. Gardner, supra.* We recommend a review of our comments therein. *United States v. Gardner, supra* n. 10.

### III

 The second part of this assignment of error is that the Government made improper use of the accused's suppressed confession. We fail to see any merit to this assertion. The confession was admitted into evidence over timely objection after the accused's testimony on the merits. The trial judge stated specifically that he was admitting it as a prior inconsistent statement. Since the confession was suppressed due to a defect in the advice to counsel, it was fully admissible for impeachment purposes. M.R.E. 304(b). Second, the accused's testimony included substantially all of the information which the confession contained, thereby providing a judicial confession. We fail to discern any prejudice to the accused.

### IV

 Appellate defense counsel also aver that the trial judge erred by striking the partial testimony of a defense witness without first invoking other remedies. We disagree.

Trial defense counsel called Airman Vest for the purpose of proving Aea's motive for bias against the accused. M.R.E. 608(c). Although there were some attempts by Vest to exercise her right against self-incrimination during direct examination, trial defense counsel was successful in eliciting the desired evidence. Trial counsel, however, was not as successful on cross-examination. As a result, the trial judge granted, in part, trial counsel's motion to strike Vest's testimony. The trial judge ruled that he would disregard Vest's testimony as it related to her claim that Aea said he could testify to drug matters that never occurred, but the accused could never contradict them or prove he (Aea) was lying; and, Vest's testimony that Aea called another individual and asked that person to take care of the accused, which she interpreted as a request to do bodily harm to the accused.

We need not decide whether the trial judge should have taken other alternatives, for the record amply demonstrates that the accused was not denied the evidence he sought. *See United States v. Richardson,* 15 M.J. 41 (C.M.A.1983).

Aea testified against the accused. Portions of his cross-examination proceeded as follows:

Q. Now, you were about to be discharged before your court-martial, is that correct?

A. Separated.

Q. At the expiration of your term of service?

A. 5 November '83.

Q. And how many days before your separation did you come under investigation?

A. Approximately 25 days.

Q. And that stopped you from leaving, didn't it?

A. Yes sir.

Q. And that made you pretty mad, didn't it?

A. Yes sir.

Q. In fact, you're still mad about it, aren't you?

A. It wore off.

Q. Now, the main witness in your trial was Sergeant Lucas, wasn't it?

A. Yes sir.

Q. And isn't it true that in your opinion if Sergeant Lucas had not come forward, you would not have been court-martialed?

A. Yes sir.

Q. And that if it had not been for Sergeant Lucas, your case wouldn't have gone to trial?

A. Yes sir.

Q. And if it weren't for Sergeant Lucas, no one would have found out about you.

A. They knew about me but I don't think they had enough on me.

Q. So you were pretty mad about having had that happen and to be court-martialed and to stick around, wouldn't you?

A. Yes sir.

Q. Isn't it true that while you were in jail, you had a lot of thoughts about how you were going to get back at Sergeant Lucas?

A. Yes sir.

Q. After you got out of jail, you called Tony Lombard on the phone, didn't you?

A. No sir.

Q. Before, I'm sorry, before you went to jail you called Tony Lombard, didn't you?

A. Yes sir.

Q. And you talked about your case, didn't you?

A. Yes sir.

Q. Do you know anything about Tony Lombard's family?

A. No sir.

Q. And isn't it true that during that phone call, you asked Tony Lombard to take care of Sergeant Lucas?

A. No sir.

Q. Didn't you express to him your anger against Sergeant Lucas?

A. Yes sir.

Q. Didn't you express to him that you wished there could be something done about it?

A. No sir. I just told him I was in trouble.

Q. And isn't that true that you decided you would get even with Sergeant Lucas after the trial?

A. By testifying against him.

Q. And isn't it true that you didn't want to just get even, you wanted revenge?

A. No sir.

Q. Isn't it true that you told people you were going to put him away?

A. In jail, yes sir.

Q. Now you made a statement to the OSI about Lucas, didn't you?

A. Yes sir.

Q. That statement was made while you were in jail, wasn't it?

A. Yes sir.

Q. And your testimony today is part of your plan to get even with Lucas, isn't it?

A. Yes sir.

Q. And you are not opposed to exaggerating in order to take care of that, are you?

A. No sir. Excuse me?

Q. And isn't it a fact that you told—

TC Excuse me. I'm sorry, Your Honor. I think the witness has some confusion about that last question.

MJ You'll have an opportunity for redirect.

TC Very well, Your Honor.

DC Airman Aea, isn't it a fact that you told Kathy Vest that Lucas was not selling the marijuana or the cocaine but he wouldn't be able to prove it.

A. No sir.

Under these circumstances, Aea's potential bias was fully litigated. The factfinder had more than adequate evidence on which to fully assess Aea's worthiness of belief.[7] The accused suffered no prejudice.

We have considered the remaining assignment of error and find it to be without merit.

**V**

The findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, and O'HAIR, Judge, concur.

---

**7.** The record clearly indicates that trial defense counsel was aware of the potential problems with eliciting Vest's testimony well before trial. The difficulty at trial may have been avoided had trial defense counsel requested testimonial immunity for her prior to trial. *See United States v. Villines*, 13 M.J. 46 (C.M.A.1982).