UNITED STATES, Appellee,

v.

Rayfield BOYD, Staff Sergeant, U.S. Air Force, Appellant.

No. 58,331
ACM 25826.

U.S. Court of Military Appeals.

Sept. 29, 1988.

For Appellant: *Major Thomas O. Maser,* USAFR (argued); *Colonel Leo L. Sergi* and *Major Deborah A. Baker* (on brief).

For Appellee: *Major Carole W. Hanson* (argued); *Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Captain Marc Van Nuys* (on brief).

*Opinion of the Court*

COX, Judge:

Staff Sergeant Boyd was tried on September 30 and October 1, 1986, by a military judge sitting as a general court-martial at Edwards Air Force Base, California. Prior to entering pleas, he moved to dismiss the charge and specifications on the ground that they were based on evidence derived from his prior immunized testimony in the court-martial of Senior Airman Wills. The military judge heard evidence, made essential findings, and denied the motion. After reserving the right to appeal the military judge's ruling, *see* R.C.M. 910(a)(2), Manual for Courts-Martial, United States, 1984, appellant entered pleas of guilty and was convicted of wrongful possession, use, introduction, and distribution of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. He was sentenced to a dishonorable discharge, confinement for 30 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence, and the Court of Military Review affirmed in a memorandum opinion.

This Court granted review to consider: WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED BY FAILING TO GRANT THE MOTION TO DISMISS BASED ON THE GOVERNMENT'S IMPROPER USE OF IMMUNIZED TESTIMONY.

We conclude that the military judge improperly applied the standards set forth in

*Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), and reverse.

Appellant, a medical technician, was one of several personnel assigned to the base hospital who were under investigation for drug offenses in the summer of 1985. On January 31, 1986, he was charged with stealing a patient's narcotic medicine, wrongfully using that medicine, being incapacitated for duty, making a false official statement, and attempting to wrongfully obtain Demerol. He applied for discharge in lieu of trial by court-martial. On February 19, 1986, while these charges were pending, Staff Sergeant Anthony Carr, who had recently been convicted of drug offenses, made a statement to the Office of Special Investigations (OSI) concerning drug use on base, and alleged that appellant had possessed, used, and distributed cocaine. A similar allegation had been made by Airman Elizabeth Murphy-Sweet several months earlier, in November 1985. However, no investigation was instituted against appellant, and no court-martial charges were preferred based upon this information.

Despite these allegations, on May 14, 1986, appellant's request for discharge in lieu of court-martial was approved. One week later, appellant was ordered to testify as a government witness under a grant of testimonial immunity in the court-martial of Senior Airman Edward Wills.[1] Appellant testified and on June 11, Wills was convicted.

Two days after his conviction, Wills volunteered a sworn statement to the OSI accusing appellant of participation in drug-related activities, including possession, use, and distribution of cocaine. On June 19, 1986, the OSI obtained a second sworn statement from Wills, wherein he reit-erated appellant's involvement in drug activities. In that statement, Wills also mentioned that he and appellant had known in April 1986 that they were "under investigation" by OSI, and that they had "decided that if asked we would not discuss each other's narcotics involvement"; they had "made an agreement that we would not provide statements against each other." On that same day, at the request of Captain Lauro, the Assistant Staff Judge Advocate and trial counsel, the OSI interviewed and obtained a sworn statement from Airman First Class Kimberly Roberts implicating appellant in drug-related activities. Roberts made a second statement on June 25, 1986. Captain Lauro testified that the decision to interview Roberts was at least partly motivated by information he had learned from Wills' statements. Several days after these statements were obtained, the approval of appellant's request for administrative discharge was withdrawn, and on June 30, 1986, charges were preferred against appellant.

Appellant argues that these charges are based in part on information derived from his immunized testimony given in the *Wills* trial. He does not allege that the actual immunized testimony was itself used. Rather, he asserts that Wills' *decision* to make statements against him resulted from appellant's compelled testimony, and that Roberts' information resulted at least in part from that of Wills, and therefore, this evidence is derivative of his immunized testimony and tainted. *See United States v. Brimberry,* 744 F.2d 580, 586–87 (7th Cir. 1984); *United States v. Kurzer,* 534 F.2d 511, 516–18 (2d Cir. 1976).

The following chronology shows what evidence was available at the time the decision was made to immunize appellant, and what evidence was available after appel-

---

1. A grant of testimonial immunity provides "immunity from the use of testimony, statements, and any information directly or indirectly derived from such testimony or statements by that person in a later court-martial." R.C.M. 704(a)(2), Manual for Courts-Martial, United States, 1984. It is "[t]he minimum grant of immunity adequate to overcome the privilege" against self-incrimination provided by the Fifth Amendment to the Constitution and Article 31, UCMJ, 10 U.S.C. § 831. By its terms "neither the testimony of the witness nor any evidence obtained from that testimony may be used against the witness at any subsequent trial ..." Mil.R.Evid. 301(c)(1).

lant's immunized testimony, when the decision was made to prosecute appellant:

Summer 1985—AFOSI investigation of drug use on base

Oct 17 1985—Appellant recruited by AFOSI as a confidential source

Nov 1985—Airman Murphy-Sweet alleges appellant involved with cocaine

Jan 31 1986—Appellant charged with stealing patient's medication

Feb 19 1986—Staff Sergeant Carr alleges appellant involved with cocaine

Mar 3 1986—Appellant's defense counsel terminates his AFOSI work

Mar 11 1986—Appellant requests administrative discharge under AFR 39–10, ch.4, in lieu of court-martial

May 14 1986—Appellant's request for chapter 4 discharge approved

May 21 1986—Appellant granted immunity and ordered to testify against Senior Airman Wills

May 22 1986—Wills' court-martial for drug offenses

Jun 11 1986—Appellant testifies against Wills, and Wills convicted

Jun 13 1986—Senior Airman Wills comes forward and alleges appellant's involvement with cocaine

Jun 19 1986—Wills makes 2d sworn statement alleging appellant's involvement with cocaine

Jun 19 1986—Airman First Class Roberts makes statement alleging appellant's involvement with cocaine

Jun 25 1986—Roberts makes 2d sworn statement alleging appellant's involvement with cocaine

Jun 30 1986—Approval of appellant's Chapter 4 discharge withdrawn

Jun 30 1986—Captain Lauro drafts drug charges against appellant

Aug 1986—In preparation for Article 32, UCMJ, 10 U.S.C. § 832, investigation, Captain Lauro reads the immunized testimony appellant gave in the Wills court-martial

Aug 5 1986—Appellant's Article 32 investigation

Aug 12 1986—Captain Lauro removes himself from appellant's case because of his exposure to appellant's immunized testimony, and a new trial counsel is appointed

Sep 30 1986—Appellant's court-martial for use, possession, introduction, and distribution of cocaine

Oct 1 1986—Appellant sentenced

This case illustrates some of the pitfalls the Government may face when it chooses to prosecute an individual after he has been compelled to testify under a grant of testimonial, or "use," immunity. These problems are especially acute when additional investigation and the decision to prosecute come after the immunized testimony has been given.[2]

The objective of use immunity is to leave "the witness and the prosecutorial authorities in substantially the same position as if the witness had claimed the Fifth Amendment privilege." *Kastigar v. United States*, 406 U.S. at 462, 92 S.Ct. 1653, 32 L.Ed.2d 212. To ensure this, the Government is "prohibited from making any ... use of compelled testimony and its fruits." *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609–10, 12 L.Ed.2d 678 (1964) (footnote omitted). The Supreme Court described the scope of this prohibition as providing "a comprehensive safeguard," barring the use of compelled testimony not only as an investigatory lead, but "also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures." The Government has the burden "to prove that the evidence it proposes to use" against a previously immunized individual "is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar v. United States, supra* 406 U.S. at 460, 92 S.Ct. at 1664. "As a result of this heavy burden, 'only the exceptional case can be tried after a grant of testimonial

---

**2.** *See United States v. Byrd,* 765 F.2d 1524, 1530–31 (11th Cir. 1985); *United States v. Semkiw,* 712 F.2d 891 (3d Cir. 1983); *United States v. McDaniel,* 482 F.2d 305, 311 (8th Cir. 1973).

immunity.' " *United States v. Zayas*, 24 M.J. 132, 137 (C.M.A.1987)(Cox, J., dissenting) (*quoting United States v. Rivera*, 1 M.J. 107, 111 n.6 (C.M.A. 1975)).

We must determine whether the Government has met the heavy burden in this case to prove that the decision to prosecute appellant as well as the new evidence was developed wholly independently of appellant's immunized testimony. We are not prepared to draw that conclusion from this record.[3]

No evidence was catalogued or sealed in preparation for appellant's prosecution for cocaine offenses prior to his immunized testimony.[4] Until the Government obtained Wills' and Roberts' statements, no cocaine charges had been initiated against him, and the Government had neither Wills' nor Roberts' information prior to appellant's testimony in Wills' case. Captain Lauro testified that even though the Government had statements from Carr and Murphy-Sweet, this evidence was deemed insufficient to prefer charges.[5] The information from Wills and Roberts provided necessary corroboration. The decision to prosecute appellant was made after his compelled testimony; until then, he had an approved administrative discharge.

During litigation on the motion to dismiss, the Government presented three witnesses to testify that no use was made of appellant's immunized testimony. These witnesses were the Staff Judge Advocate, the Assistant Staff Judge Advocate, and an OSI Special Agent. Based upon their testimony and trial counsel's representations, the military judge found that the Government had met its burden of demonstrating that it had derived no benefit from appellant's compelled testimony.

The military judge erred in basing his findings solely on the Government's representations. *See United States v. Rivera, supra* at 110. The Government's "burden of proof ... is not limited to a negation of taint." Appellant is "not dependent for the preservation of his rights upon the integrity and good faith of the prosecuting authorities." *Kastigar v. United States*, 406 U.S. at 460, 92 S.Ct. at 1665. "What is required to permit a prosecution to go forward after a showing the accused has been granted testimonial immunity is something more than mere representations on the part of the Government, no matter that they were uttered in good faith and with the utmost integrity of belief." *United States v. Rivera, supra* at 110. "[N]either speculation nor conclusory denials of use or derivative use by government officials will substitute for the affirmative showing of an independent source required for each and every item of evidence ..." *United*

---

**3.** We are particularly concerned with the potential for abuse presented here, where the Government used a grant of immunity to enable it to make its case against an accused, and then used information and leads developed from the subsequent statements of that convicted accused to make a case against the immunized witness. Absent some unique or compelling circumstances far beyond the facts of this case, we simply will not permit the Government to do business this way. *See United States v. Hampton*, 775 F.2d 1479, 1488–89 (11th Cir. 1985); *United States v. Kurzer*, 422 F.Supp. 487 (S.D.N.Y.1976), *on remand from* 534 F.2d 511 (2d Cir. 1976); *United States v. Rivera*, 1 M.J. 107, 108 n.1 (C.M.A.1975).

**4.** We reiterate the suggestion that the Government should consider taking the precaution of "cataloguing" or "freezing" the evidence it has compiled against an individual prior to taking immunized testimony to assist in meeting the heavy burden of proving a legitimate, independent source of its evidence at any subsequent court-martial. *See United States v. Gardner*, 22 M.J. 28, 32 (C.M.A.1986). We also note that appellant's immunized testimony was not sealed, but was left in the Staff Judge Advocate's office where Captain Lauro, the Assistant Staff Judge Advocate, read it, necessitating his removal from appellant's case and substitution of another trial counsel.

**5.** In his findings of essential facts, the military judge ruled that in drafting the charges against appellant, Captain Lauro had considered the statements of Wills and Roberts, obtained after appellant's immunized testimony against Wills, as well as the pre-existing information provided by Carr and Murphy-Sweet.

*States v. Hampton*, 775 F.2d 1479, 1489 (11th Cir. 1985). The question of whether the Government had such an independent source for every item of its evidence "is a question of fact which requires an evidentiary hearing." *United States v. Rivera*, *supra* at 110, *quoting United States v. McDaniel*, 449 F.2d 832, 836–37 (8th Cir. 1971).

Wills' state of mind and motivation for coming forward and making a statement against appellant were "directly relevant" to determining whether those statements were "directly or indirectly derived" from immunized testimony. *See United States v. Kurzer*, 534 F.2d 511, 517 (2d Cir. 1976), *on remand*, 422 F.Supp. 487, 489 (S.D.N.Y. 1976). The Government's representations at the *Kastigar* hearing were insufficient to establish that appellant's testimony did not contribute to Wills' decision to come forward and make the sworn statements against appellant. The military judge erred in relying on the Government's representations of Wills' motives.[6]

"The United States Supreme Court has exacted a high price for a grant of immunity …" *United States v. Zayas*, *supra* at 137 (Cox, J., dissenting). *Kastigar* and its progeny require dismissal of charges against a previously immunized witness unless the Government affirmatively proves "that 'none of the evidence … is derived, directly or indirectly, from the immunized

testimony….'" *United States v. Hampton*, *supra* at 1489, *citing United States v. Byrd*, 765 F.2d 1524, 1530 (11th Cir. 1985). The Government must be especially vigilant in order to meet this burden if it seeks to prosecute an immunized witness using information provided after he has testified. It did not meet that burden in this case.

The decision of the United States Air Force Court of Military Review is reversed. The findings and sentence are set aside. The charges are dismissed.

Judge SULLIVAN concurs.

EVERETT, Chief Judge (concurring):

If A testifies against B in a criminal trial which results in B's conviction, it is quite foreseeable that, in turn, B will provide investigators with evidence that is damaging to A. The motive for doing so may be revenge or a desire to curry the favor of law-enforcement officials and thereby obtain a reduction in sentence. Consequently, the Government's burden is heavy in showing that the evidence later provided by B is not the product of A's testimony and therefore inadmissible under the rule established in *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 31 L.Ed.2d 212 (1972). I agree fully with the majority opinion that the Government failed to carry this burden.

6. At appellant's Article 32 investigation, Wills testified that appellant's testimony against him contributed to his decision to come forward and make a statement against appellant, despite their prior agreement not to inform on each other. "I knew that he was the only truthful witness that could come before me in court. I changed my mind after he stepped on the stand."