## UNITED STATES, Appellant,

v.

**George E. TUCKER, III, 414 13 1615, Seaman Apprentice (E–2), U.S. Navy, Appellee.**

**Misc. Dkt. No. 85–03.**

U.S. Navy-Marine Corps Court of Military Review.

·28 March 1985.

RAPP, Judge:

This case is now before us on appeal by the Government. The military judge granted appellee's motion to dismiss on the ground that the Government had been unable to meet the heavy burden of demonstrating that no derivative use had been made of appellee's immunized testimony in his court-martial. The Government has asserted that the military judge erred by: (1) applying an incorrect legal standard to conclude that improper use had been made of immunized testimony, (2) ruling that the Government was precluded from requesting reconsideration of the military judge's decision to grant the motion to dismiss while a 72-hour delay was in effect pursuant to R.C.M. 908(b), *Manual for Courts-Martial, 1984* (MCM), for the Government to decide whether to file a notice of appeal, and (3) denying the Government's request to reopen the evidentiary hearing on the motion to dismiss to present further testimony.

 No matter how the Government characterizes the first issue, it is still in essence a question of fact. We are precluded, as a result, from overriding the military judge's decision, even if we disagreed with him. Article 62(b), Uniform Code of Military Justice, 10 U.S.C. § 862(b); R.C.M. 908(b)(2), MCM. Furthermore, the military judge's explanation of his ruling shows that he applied an acceptable legal standard in this somewhat murky area of the law. *See Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *United States v. McDaniel*, 482 F.2d 305 (8th Cir.1973); *United States v. Rivera*, 1 M.J. 107 (C.M.A.1975); *compare United States v. Eastman*, 2 M.J. 417 (A.C. M.R.1979) *with United States v. Gardner*, 18 M.J. 612 (A.F.C.M.R.1984).

 Common sense and the very wording of R.C.M. 908(b)(4), MCM, have convinced us that the military judge erred as a matter of law when he denied the Government's request for reconsideration of his decision to grant the motion to dismiss. The plain meaning of the Rule's

CAPT David B. Stratton, USMC, Appellate Government Counsel.

MAJ Patrick H. McGann, Jr., USMC, Appellate Defense Counsel.

LT Gary K. Van Meter, JAGC, USNR, Appellate Defense Counsel.

caution that, "no session of the court-martial may proceed" would be contradicted by the contrary position, as the military judge is not "proceeding" but rather is acting on a motion already before him. Further, reconsideration would be consistent with the intent of the Rule's drafters set forth in the Analysis of the Rule (*Manual for Courts-Martial*, A21–51) to minimize the potentially adverse effect of Government appeals on trial dockets, military operations, and appellate courts; i.e., the military judge's reconsideration and reversal of his ruling would obviate the need for such appeal. The military judge possesses adequate authority and powers to regulate litigation of requests for reconsideration by strictly limiting information presented to newly-discovered evidence, matters not reasonably available for introduction at the earlier proceedings, or similar subjects.

■ While we commend the military judge for including in the record the specific, proffered testimony in dispute, rather than the brief, generalized offer of proof we frequently see, we cannot agree with him that Rule 905(f), MCM, does not allow presentation of further evidence on the motion to reconsider. The military judge has broad powers to use in shaping the proceedings over which he presides. Allowing a motion to reconsider without opportunity to present further information could deprive the military judge of matters proper for his consideration and crucial to his decision. We trust that the military judge would exercise his discretion to limit such presentations within appropriate bounds, as we discussed above. We decline to grant relief, however, as the proffered testimony was relevant only to the question of fact, which is beyond our jurisdiction. Accordingly, appellant's motion to reverse the ruling below is denied.

Senior Judge KERCHEVAL concurs.

MAY, Judge (dissenting):

I dissent. My brothers have correctly found that the trial judge erred in his overly restricted rulings related to assignments of error II and III. My disagreement, however, is aimed at their view that the trial judge's ruling, which dismissed Charge I and the Additional Charge, is immune from remedial action by this court because of the proscriptions of Article 62(b), Uniform Code of Military Justice (UCMJ). The trial judge's error was not a "question of fact," but an error of *law*. Without embarking on the unsettled sea of federal appellate circuit and other military review court interpretations of the holding in *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), it is self-evident that the dismissal ruling by the trial judge in this case did not evolve from a factual determination of witness credibility, weight, or magnitude of the presented evidence. On the contrary, taking the appellee's trial assertions in their most favorable light—that some "use" of the appellant's immunized testimony at an earlier trial of a related offender occurred—the trial judge's dismissal ruling rests upon an invalid *legal* foundation.

The controlling case is *Kastigar*, and I find in that decision not the slightest support *in law* for the legal ruling that once the defendant has established that he has previously testified under a grant of testimonial immunity, the Government, to avoid dismissal of the affected charges, must establish that *no use* was made of the immunized testimony. Yet, that is exactly what is objectively obvious in the trial judge's view of the law here.

My brothers have, I fear, been misled by the talismanic effect of the trial judge's words which intertwine the phrases: "difficult, if not impossible, to determine," "the court cannot determine," and "the Government has been unable to meet [the] burden," as indicators of *factual rulings* by the trial judge. The overall wording of the ruling notwithstanding, the salient pronouncement by the military judge clearly stamps this dismissal of charges decision of one of "factual" findings applied to *incorrect law:*

As the case law makes amply clear, the Government is under a heavy burden to show that the evidence it intends to sub-

mit is wholly independent of the immunized testimony. *The Government has a similar burden in affirmatively demonstrating that no derivative use has been made of that evidence as well. In this case, the Government has been unable to meet that burden with regard to the possible derivative use of the immunized testimony.*

(Emphasis added). The second requirement, underlined above, apparently engrafted by the trial judge, is not a correct statement of the law. The Government's burden under present controlling law is to establish that its evidence is wholly independent of the immunized testimony. *Kastigar, supra; United States v. Rivera,* 1 M.J. 107, 110 (C.M.A.1975). Whatever may have been the trial judge's peripheral conclusions regarding the *use* of the accused's testimony following the *Sloan* trial, his findings of fact regarding the independent character of the Government's evidence are conclusive:

It appears to this court that the government had independent evidence on which to proceed in this case prior to 10 September of 1984. Even subsequent to *Sloan*'s trial, the government had independent evidence on which to proceed against Seaman Apprentice Tucker, that evidence being Prosecution Exhibits 73, 75, and 76 for identification, which were prepared by Yeoman First Class Zeckser from muster reports and message traffic. At that time, Yeoman First Class Zeckser clearly had no knowledge of any of Seaman Apprentice Tucker's testimony given at the *Sloan* trial.

It is also obvious that whatever concerns are present at this court regarding the independent quality of the evidence, such concerns are minimal when the affected charges are three specifications of unauthorized absence, all amply supported by official record entries. The affected charges do not involve complex offenses, multiple perpetrators, conflicting or uncertain facts and circumstances, or doubt regarding the efficacy of the charges.

Judge S, however, apparently believed that, as a matter of law, the Government was required to establish not only that its trial evidence was obtained from wholly independent and legitimate official and business record sources, but that as a *further requirement*, the Government must establish that it had made no "derivative use" of such immunized testimony, no matter that, in the case at hand, there clearly existed neither the need nor the desire for additional evidence to establish appellant's guilt of three periods of unauthorized absence.

What has been intended as an understandable and necessary principle to protect, under self-incrimination concepts, an immunized witness from the later use of his immunized testimony against himself, has now been expanded, in the majority view of my brothers, beyond the bounds of reason.

Appellee and my brothers have foundered on the phrase, "question of fact," contained in the salient appellate opinions interpreting *Kastigar.* They have gone astray because their syllogism, whose premises:

1. that an immunized testimony issue is a question of fact; and

2. that questions of fact are properly resolved at the trial level by the trial judge;

lead them to the conclusion: factual determinations by the trial judge cannot be the subject of a Government appeal. Article 62(b), UCMJ.

Each of the elements of the syllogism is valid. It is the legal parameter established by the trial judge which is faulty. The "question of fact," the *legal issue* raised in immunized testimony cases, is not whether, as the trial judge here believed, the Government has made "any use" of the immunized testimony—an inquiry arena whose limits are objectively boundless. The question of fact determination is whether: "the Government has carried its heavy burden and established that its evidence at trial is derived from a legitimate source wholly independent of the compelled

testimony." *Kastigar*, 406 U.S. at 460, 92 S.Ct. at 1665.

The only tenable conclusion, therefore, which can be drawn from any examination of the record, is that the dismissal decision below was arrived at by an incorrect legal interpretation. The trial judge obviously found that the Government had established that its intended trial evidence was legitimate and wholly independent of the immunized testimony. What other character could be accorded to six NAVPERS 1070 Records of Unauthorized Absence; 62 daily muster reports from the accused's ship; three naval messages, and the testimony of the ship's leading yeoman?

It is obvious, then, that the trial judge applied and erected an additional legal hurdle for the Government, by plumbing the depths of "derivative use." There exists no controlling law to support such a broad construction.

This dismissal ruling by the trial judge was an *error of law* and within our power to evaluate. Upon evaluation, it is in error; it should be reversed, and the record remanded to the Judge Advocate General of the Navy for transmittal to the appropriate convening authority for continuation of the trial proceedings in this case.