UNITED STATES, Appellee,

v.

James T. GARDNER, Senior Airman
U.S. Air Force, Appellant.

No. 50,459.
ACM S26286.

U.S. Court of Military Appeals.

April 7, 1986.

For Appellant: *Captain Timothy J. Malloy* (argued); *Colonel Leo L. Sergi* (on brief).

For Appellee: *Lieutenant Colonel Donal F. Hartman, Jr.* (argued); *Colonel Kenneth R. Rengert* (on brief); *Colonel Andrew J. Adams, Jr.*

*Opinion of the Court*

EVERETT, Chief Judge:

At appellant's special court-martial, defense counsel moved for dismissal of the Charge and its specifications on the ground that the proceedings had been fatally tainted by the earlier participation of the assistant trial counsel in obtaining Gardner's immunized testimony at an alleged coactor's investigative hearing under Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832. After hearing evidence and argument on the motion, the military judge entered extensive findings of fact. Then, he disqualified the assistant trial counsel from any further role in prosecuting appellant but denied the motion to dismiss.

Trial proceeded through findings and sentence;[1] and the convening authority ap-

1. Contrary to his pleas, appellant was convicted of two specifications of use of marihuana and one of distribution, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C.

proved the results. Based on a full recitation of the relevant facts and a thorough analysis of the applicable law, the Court of Military Review upheld the military judge's rulings on the motion to dismiss and affirmed Gardner's conviction. 18 M.J. 612 (1984).

Now appellant renews in this Court his complaint that the Government failed to carry its burden of showing that his court-martial was not improperly tainted by the actions of the assistant trial counsel. 19 M.J. 145. We conclude, however, as did the Court of Military Review, that the prompt remedial action taken by the military judge prevented the immunized testimony from being misused.

I

Gardner and Airman First Class Bobby Wilkerson were two of a number of persons identified as participants in a local drug operation. Apparently, Wilkerson was the central character of that group; and the Government set out to prosecute the others, like appellant, and then to utilize their testimony in Wilkerson's trial.

On October 24, 1983, Lieutenant Cole J. Gerstner was detailed to be the assistant trial counsel in appellant's case. Trial was scheduled for November 15, 1983; and the Government was fully prepared to go to trial at that time. However, for reasons unrelated to this appeal, appellant's trial was continued until December 5, 1983—which unanticipated continuance led to the problem now before us.

Gerstner also was assigned as the Government's representative at the initial session of Wilkerson's Article 32 hearing in late October 1983. On that occasion, a number of key witnesses asserted their privilege against self-incrimination. Thus, on November 22, Gerstner prepared requests for grants of testimonial immunity for those persons, including appellant. The immunity was granted; and on December 2, 1983, the Article 32 hearing was reconvened. There, appellant testified for approximately one hour, about half of which was under direct examination by Gerstner, who continued to act as the Government's representative.

Appellant's testimony at that hearing revealed nothing essentially new to the Government. In fact, the only variation between that testimony and Gardner's earlier pretrial statement given to the OSI concerned the number of times he supposedly had used marihuana: The number recited at the hearing was about one-third less than appellant had admitted in his pretrial statement. After the hearing, Gerstner's only mention of appellant's testimony to anyone was briefly to tell the staff judge advocate that Gardner had testified consistent with his pretrial statement and that he had appeared nervous during the hearing.

On December 4, Gerstner proofread the transcript of appellant's testimony and, then, sealed it and placed it under lock. The sealed transcript was not opened thereafter until litigation of appellant's motion to dismiss.

In the meantime, on December 2—while Wilkerson's hearing was in session—Captain George Cully arrived on base to function as trial counsel in appellant's court-martial. Cully and Gerstner agreed that the latter would have primary responsibility to prosecute appellant, and the two prepared their case between December 2 and 4. Gerstner's preparation was based on the OSI report of investigation—which included appellant's pretrial statement admitting his drug involvement and the names of witnesses to be used against him—and witness interviews. Gerstner had earlier interviewed these witnesses prior to the originally scheduled date for appellant's trial but he reinterviewed them once Cully had arrived on site. During those interviews, Cully was present but frequently left the room and did not directly participate in them. At no time during their preparation for appellant's court-martial did Gerstner

§ 934. His sentence was a bad-conduct discharge, confinement and forfeiture of $200 pay per month for 3 months, and reduction to the lowest enlisted grade.

mention to Cully appellant's immunized testimony, and Cully did not inquire about it.

At the hearing on appellant's motion to dismiss, Gerstner testified that appellant's immunized testimony had had no impact whatsoever on his trial preparation or tactics and that nothing of significance had come to light in that testimony. Specifically, he swore that the immunized testimony had not changed his view of appellant's case at all, had not caused him to call additional witnesses, did not influence his interviews of those witnesses, and had not affected his prosecutorial action in any other way.

As mentioned earlier, after hearing all this evidence and after entering exhaustive findings of fact, the military judge disqualified Gerstner from any further activity in appellant's prosecution. Moreover, he ordered that Gerstner's notes be sealed and that Gerstner have no contact with Cully for the duration of appellant's trial. Thereafter, Captain Cully acted alone as prosecutor in the case.

II

A

A grant of testimonial immunity represents "a rational accommodation between the imperatives of the [fifth-amendment constitutional] privilege [against self-incrimination] and the legitimate demands of government to compel citizens to testify." *Kastigar v. United States,* 406 U.S. 441, 446, 92 S.Ct. 1653, 1657, 32 L.Ed.2d 212 (1972). *Accord Pillsbury Co. v. Conboy,* 459 U.S. 248, 252–54, 103 S.Ct. 608, 611–12, 74 L.Ed.2d 430 (1983). Because the fifth-amendment privilege is paramount, however, *see Kastigar v. United States, supra* at 444, 92 S.Ct. at 1656, an accused is entitled to an assurance that he is as protected from use against himself of his immunized testimony as he would be from invocation of the privilege itself.

Thus, as the Supreme Court has explained, a grant of testimonial immunity "is coextensive with" an accused's fifth-amendment constitutional right against self-incrimination. *Id.* at 453, 92 S.Ct. at 1661; *accord Pillsbury Co. v. Conboy, supra* at 254–55, 103 S.Ct. at 612–13. Accordingly, "the Federal Government must be prohibited from making any ... use of compelled testimony and its fruits." *Murphy v. Waterfront Commission,* 378 U.S. 52, 79, 84 S.Ct. 1594, 1609–10, 12 L.Ed.2d 678 (footnote omitted). *Accord Kastigar v. United States, supra,* 406 U.S. at 453, 92 S.Ct. at 1661. The objective of "immunity from use and derivative use" of compelled testimony is to " 'leave[ ] the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege in the absence of a ... grant of immunity." *Id.* at 458–59, 92 S.Ct. at 1664, quoting *Murphy v. Waterfront Comm'n., supra,* 378 U.S. at 79, 84 S.Ct. at 1609–10.

To ensure this maintenance of the status quo between an accused and the Government, the Supreme Court set out the following standard:

> "Once a defendant demonstrates that he has testified, under a ... grant of immunity, to matters related to the ... prosecution, the ... authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." [*Murphy v. Waterfront Comm'n.,* ] 378 U.S., at 79 n. 18, 84 S.Ct. at 1609 n. 18.
>
> This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

*Kastigar v. United States, supra* 406 U.S. at 460, 92 S.Ct. at 1665.[2]

2. Appellant claims before us that "the conduct of the Government in the handling of the appellant's prosecution resulted in taint *per se.*" The standard established in *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), is inconsistent with this claim be-

B

Applying this standard to the facts found by the military judge based on the evidence revealed at the hearing he conducted into this serious matter,[3] we conclude that the Government carried its burden here. First, appellant's immunized testimony revealed nothing which was not already known to the Government by virtue of appellant's own pretrial statement preserved in the investigatory file assembled before the immunized testimony was obtained.[4] As such, that statement serves as the legitimate, independent source of anything contained in appellant's immunized testimony. Indeed, well before appellant's immunized testimony was obtained, the investigation against appellant was complete, and the subsequent immunized testimony added nothing to that file.[5]

Second, the decision to prosecute appellant at the highest level of court-martial was made well before appellant's immunized testimony was given; indeed, as earlier mentioned, except for reasons unrelated to this issue appellant's court-martial would have been completed before Wilkerson's Article 32 hearing was reconvened in December. Therefore, to whatever extent use immunity goes beyond direct and indirect *evidentiary* uses of compelled testimony and includes other uses—such as guiding the exercise of prosecutorial discretion—appellant was fully protected.[6]

Finally, to insulate fully appellant's proceedings from any possible residual taint, the military judge properly disqualified the assistant trial counsel from any further conduct in the prosecution after it already had been established that the trial counsel, who did continue in the case, had not himself been exposed in any way to appellant's immunized testimony.[7]

Accordingly, we are fully satisfied that here the Government affirmatively carried its burden of showing that, notwithstanding Gardner's immunized testimony, he and the Government were in substantially the same position as if he had claimed his privilege in the absence of the grant of immunity. *See Murphy v. Waterfront Comm'n., supra*; *accord Pillsbury Co. v. Conboy* and *Kastigar v. United States,* both *supra.* To hold that, under the circumstances of this case, the prosecution of Gardner was barred would virtually transform use immunity into transactional immunity—a result which under *Kastigar* is not required in order to safeguard a witness' fifth-amendment privilege against self-incrimination. Then, in turn, willingness in the future to grant use immunity—whether at the request of the Government or of the defense[8]—would be inhibited by a reason-

cause clearly it does not contemplate giving a witness the inclusive immunity for which appellant contends—an immunity that, in effect, would be transactional.

3. *See generally United States v. Rivera,* 1 M.J. 107, 110 (C.M.A.1975) (whether the Government had an independent, legitimate source of its evidence "is a question of fact which requires an evidentiary hearing," quoting from *United States v. McDaniel,* 449 F.2d 832, 836–37 (8th Cir. 1971)); *accord United States v. Whitehead,* 5 M.J. 294, 296 n. 11 (C.M.A.1978).

4. *See generally United States v. Turkish,* 623 F.2d 769, 775 (2d Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981) (one method for the Government to meet its burden in this regard is "by cataloguing or 'freezing' the evidence known to the Government prior to the immunized testimony").

5. *See generally United States v. Thevis,* 665 F.2d 616, 640 n. 26 (5th Cir.), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982) ("If the criminal investigation is complete prior to the immunity grant, then immunity raises few problems.").

6. According to *United States v. Byrd,* 765 F.2d 1524, 1531 (11th Cir.1985), immunity protects only against evidentiary uses.

7. *See United States v. Rivera, supra* at 110 (trial counsel's "reading of the accused's immunized statement 'constitutes a prima facie "use" of the testimony which is prohibited by the *Murphy* exclusionary rule,'" quoting from *United States v. McDaniel, supra* at 837)). *See generally United States v. Thevis, supra* at 640 n. 26.

8. In *United States v. Martin,* 13 M.J. 66 (C.M.A. 1982), and *United States v. Villines,* 13 M.J. 46 (C.M.A.1982), the defense unsuccessfully requested immunity for the testimony of prospective defense witnesses. R.C.M. 704(e), Manual for Courts-Martial, United States, 1984, makes it easier for the defense to obtain use immunity for its witnesses.

able fear that immunized witnesses might receive an unintended windfall.

C

We pause to observe that apparently only fortuitous circumstances and prompt action by the military judge prior to trial allowed the Government in this case to shoulder its burden of proving a legitimate, independent source of its evidence against appellant. Precautions such as "cataloguing" or "freezing" the evidence known to the Government before taking the immunized testimony will help the Government carry its burden in a subsequent trial of the immunized witness; and, before immunized testimony is given, all reasonable efforts should be made by prosecution officials to memorialize what evidence is in their possession and what prosecutorial decisions have already been made.

However, staff judge advocates would do well to ensure that, whenever possible, handling of a subsequent prosecution of an immunized witness is entirely removed from any personnel involved in obtaining the immunized testimony. This, surely, is the best means of showing that the immunized witness and the Government stand substantially in the same position as if the witness had claimed his privilege in the absence of a grant of immunity.

III

The decision of the United States Air Force Court of Military Review is affirmed.

Judge COX concurs.