UNITED STATES, Appellee,

v.

Robert M. GARRETT, Private First
Class U.S. Marine Corps,
Appellant.

No. 52,635.

NMCM 82 2670.

U.S. Court of Military Appeals.

Sept. 8, 1987.

For Appellant: *William J. Holmes,* Esq.,
*Lieutenant Commander Alvin L. McDonald,* JAGC, USN, *Major Michael E. Canode,* USMC.

For Appellee: *Captain Carl H. Horst,*
JAGC, USN, *Commander Michael P.
Green,* JAGC, USN, *Lieutenant Commander John B. Holt,* JAGC, USN.

*Opinion of the Court*

EVERETT, Chief Judge:

In this appeal from a general court-martial conviction,[1] appellant assails the fundamental fairness of his trial through the following two issues:[2]

I

WHETHER THE GOVERNMENT
FAILED TO ESTABLISH A LEGITIMATE INDEPENDENT SOURCE FOR
ITS EVIDENCE AND THAT TRIAL
COUNSEL WAS NOT TAINTED BY
KNOWLEDGE OF APPELLANT'S PRIOR IMMUNIZED TESTIMONY AS REQUIRED BY *KASTIGAR V. UNITED
STATES,* 406 U.S. 441[, 92 S.Ct. 1653, 32
L.Ed.2d 212] (1972); AND *UNITED
STATES V. RIVERA,* 1 M.J. 107 (C.M.A.
1975).

II

WHETHER TRIAL COUNSEL DELIBERATELY AND IMPROPERLY

---

1. At his original trial, appellant was convicted by general court-martial of attempted robbery, conspiracy to commit robbery, unpremeditated murder, and felony murder, in violation of Articles 80, 81, and 118, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 881, and 918, respectively. He was acquitted of obstructing justice. On review, the Court of Military Review affirmed the findings of attempted robbery but set aside the remaining findings and the sentence and authorized a rehearing thereon. 16 M.J. 941 (1983). A rehearing was ordered, at which appellant again was convicted of conspiracy to commit robbery and felony murder, though he was acquitted of unpremeditated murder. The resulting sentence at the rehearing was the same as the one originally imposed: dishonorable discharge, confinement for life, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Military Review affirmed. The appeal now before us is from the decision on rehearing.

2. Another issue concerns application of the felony-murder rule; it is disposed of by our holding in *United States v. Jefferson,* 22 M.J. 315 (C.M.A. 1986).

BROUGHT TO THE ATTENTION OF THE MEMBERS THE FACT THAT, PRIOR TO TRIAL, APPELLANT HAD ASSERTED HIS RIGHT TO REMAIN SILENT AND HIS RIGHT TO COUNSEL.

In each instance, we conclude that the issue lacks merit under the facts of this case.

## I

## A

After Garrett had been convicted at his original trial, see n.1, *supra*, he was granted testimonial immunity and was called to testify at the trials of his two alleged coactors, PFC Alvin Dodson and L/Cpl Ricky Chupp. Later, as noted in footnote 1, *supra*, some of the findings and the sentence adjudged against appellant were set aside by the Court of Military Review, and a rehearing was ordered.

At the rehearing, appellant's defense counsel filed a motion for appropriate relief "to compel the Government to affirmatively establish an independent and legitimate source for its evidence or in the alternative to dismiss all charges." The Government responded:

No member of the prosecution has read the accused's immunized testimony; nor has any person in the "prosecutorial chain"; nor has the Staff Judge Advocate or his deputy; nor has the convening authority. Since the accused's first trial, the convening authority, staff judge advocate, commanding officer of the accused, trial counsel and assistant trial counsel have all changed. Finally, the Government's evidence will be confined to the evidence known to the government prior to the immunized testimony which was presented at the accused's first trial.

As attachments to this response, trial counsel included the affidavits of himself, assistant trial counsel, the convening authority, appellant's commanding officer, the staff judge advocate, and the deputy staff judge advocate. Each swore that "I have not read nor am I aware of the contents of Private First Class GARRETT's immunized testimony in the companion cases of *United States v. DODSON* or *United States v. CHUPP*." Trial counsel did reveal that he had had conversations with the original trial and assistant trial counsel to discuss the practicality of a rehearing. While he acknowledged that the original trial counsel did alert him to the fact that appellant had rendered immunized testimony in the two companion trials, "[a]t no time did we discuss the contents of Private First Class GARRETT's immunized testimony." Also, while some of the others—like appellant's commander, the convening authority, and the staff judge advocate—acknowledged some awareness of the case against him, the information in question came from the pretrial investigation or from appellant's original hearing, not from the immunized testimony.

At the hearing on appellant's motion,[3] the military judge asked to be furnished copies of appellant's immunized testimony and of the memorandum of "retrial advice" which the new staff judge advocate had furnished the new convening authority before the latter ordered appellant's rehearing. Moreover, assistant defense counsel made an offer of proof concerning conversations he had had with the original trial and assistant trial counsel: The former trial counsel would testify that he had talked with the new trial counsel about appellant's case and "that he may have discussed PFC Garrett's immunized testimony in the Chupp and Dodson trials" in a particular respect; but the proffer conceded that the former trial counsel had "stressed the word 'may' because he was not sure if he had or had not discussed that aspect with" the new trial counsel. The proffer regarding the former assistant trial counsel was more specific: He "stated that he had talked to ... [the new trial counsel] about PFC Garrett's immunized testimony. He told ... [the new trial coun-

3. *See generally United States v. Rivera,* 1 M.J. 107, 110 (C.M.A. 1975) (whether the Government "had 'an independent, legitimate source' " of its evidence " 'is a question of fact which requires an evidentiary hearing' "); *accord United States v. Gardner,* 22 M.J. 28 (C.M.A. 1986); and *United States v. Whitehead,* 5 M.J. 294, 296 n.11 (C.M.A. 1978).

sel] that Garrett and Dodson had continued to deny the serious aspects of the case, and that Private First Class Garrett and Dodson had testified that Chupp was with them all night and denied that they had left Chupp for 20 minutes."

After being placed under oath, trial counsel responded that, in his conversation with the former trial counsel, the latter had alerted him to appellant's immunized testimony but that, because trial counsel was sensitive to the potential legal quagmire inherent in any discussion of the specifics of that testimony, "we did not discuss the substance of his testimony." As to his conversation with the former assistant trial counsel, trial counsel did recall the latter "indicating a straight denial on the part of Garrett. In other words, he [Garrett] just denied that he did any wrong, and I took that to mean that he had testified consistently with his sworn statement in extenuation and mitigation in his own trial." Trial counsel pointed out that this also would be consistent with appellant's pretrial statement to the Naval Investigative Service.

Still under oath, trial counsel indicated that he had read Dodson's testimony at his own trial in order to decide whether to seek Dodson's testimony at Garrett's rehearing but that he had not read any other portion of the record of either Dodson's or Chupp's court-martial. He specifically stated he had not read appellant's immunized testimony at those proceedings.

At this point, defense counsel asked that both the former trial counsel and the former assistant trial counsel be produced for examination on this matter. Without specifically responding to this request, the military judge heard brief argument from defense counsel on the merits of the motion for relief. Then the judge indicated that he would study the earlier-requested materials, as well as three specifically cited pages from Dodson's own testimony where Garrett's immunized testimony was briefly mentioned, and that he would rule on the motion the following morning.

Next morning, the parties stipulated that the affidavits which trial counsel had attached to his written answer to appellant's written motion represented the expected testimony of the affiants. Once again, defense counsel asked for the production of the former trial and assistant trial counsel for examination. Although trial counsel then offered to stipulate that they would testify consistent with assistant defense counsel's earlier representations of his conversations with them, defense counsel wanted more: He urged that an opportunity to examine them as live witnesses was necessary to probe and prod their memories as to the exact content of their conversations with trial counsel. Trial counsel responded that, assuming arguendo that examination would reveal that he had discussed all the details of appellant's immunized testimony, appellant's simple adherence to a denial of wrongdoing was nothing new to the Government. Further, trial counsel addressed the specific references to appellant's immunized testimony found in the transcript of Dodson's testimony: The very brief references were to matters already in the Government's investigatory files and none of it was new to the Government.

At this point, the military judge denied the request for the presence of the former trial and assistant trial counsel and rendered "a preliminary ruling" on appellant's motion for relief. Concluding "that there is no indication of derivative evidence or evidence which is not independent of the accused's immunized testimony,"[4] the judge directed trial counsel to use "only evidence ... which is independent of and not derived from the immunized testimony of the accused." Further, he asked defense counsel to immediately request a session under Article 39(a), Uniform Code of Military Justice, 10 U.S.C.

---

4. This language appears to reflect that the military judge may have reversed the Government's affirmative burden of demonstrating no derivative use of appellant's immunized testimony, *see United States v. Gardner, supra;* but, as we conclude later in this opinion, the record adequately reflects that the Government carried its affirmative burden. Accordingly, any possible error reflected in the judge's language was harmless beyond a reasonable doubt.

§ 839(a), if, at any time during the trial, they believed that derivative evidence was coming to light. Finally, the judge advised the parties that, when the Government had concluded its "case-in-chief," he would again consider the matter to inquire whether either side was aware of any evidence which had flowed from appellant's immunized testimony.

When all the evidence had been presented on the merits, the military judge inquired whether either side was aware of any derivative evidence being mentioned at the trial. Although the defense maintained its position that it could not give such assurances in the absence of an opportunity to examine the former trial and assistant trial counsel as witnesses, the military judge apparently was satisfied that trial counsel had complied with his earlier order; and he reaffirmed his preliminary ruling on appellant's motion for relief.

### B

In *United States v. Gardner*, 22 M.J. 28 (C.M.A. 1986), we fully discussed the problems inherent in trying an accused after he had given immunized testimony. We do note that, here, this situation could not have been foreseen: It arose only because a good portion of the results of appellant's original trial, conducted before his immunized testimony was obtained, had been set aside on appeal.

Even then, however, the Government did all it could to isolate the immunized testimony from the rehearing. None of the officials involved in the decision whether to hold the rehearing had been exposed to the testimony, and a new prosecution team was appointed to conduct the rehearing. While it is not entirely clear whether any details of appellant's immunized testimony were related to the new trial counsel, it does appear that whatever might have been conveyed was nothing more than what was already available to the Government in its own investigative files and in the record of appellant's original trial.

■ In other words, we are satisfied that the Government carried its burden of showing that, notwithstanding appellant's immunized testimony, appellant and the

Government were in substantially the same position at the rehearing as if appellant had claimed his privilege at Dodson's and Chupp's trials in the absence of the grant of immunity. *See Kastigar v. United States*, 406 U.S. 441, 458–59, 92 S.Ct. 1653, 1663–64, 32 L.Ed.2d 212 (1972), quoting *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964); *accord Pillsbury Co. v. Conboy*, 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983). The Government's own files as well as the record of appellant's original trial, including his testimony threat in extenuation and mitigation, serve as a legitimate independent source of all the evidence against him at the rehearing. *See generally United States v. Gardner, supra*, and cases cited therein.

### II

### A

Once the rehearing began, one of the prosecution witnesses was Gunnery Sergeant Travis Mangum, an investigator with the Criminal Investigation Division. Mangum had interrogated appellant concerning his involvement with the offenses being tried. He related that he had questioned appellant at some length and that the investigation team had had some trouble talking with appellant: It seems that each time that the team had broached the subject of the robbery or the homicide, Garrett had become extremely emotional. Mangum explained that, whenever this had happened, the interrogation had paused to allow appellant the opportunity to regain his composure; and on occasion, they even had left the room during such interruptions. At this point in the examination, the following colloquy ensued:

Q: [TC] Did he ever indicate that he wanted to talk to a lawyer?

A: At about a few minutes after 2000 that evening, he advised us that he wanted to terminate the interview and seek legal counselling.

Q: What specific questions were you asking him at the time that he determined he wanted to terminate the interview?

DC: We will object, sir.

MJ: I'm sorry. On what grounds?

DC: Relevance, sir, as to what question was being asked.

MJ: Would you repeat the question, counsel?

TC: Yes, Your Honor. I said, "What specific questions were being asked to him at the time he decided to terminate the interview?"

MJ: The objection is overruled.

Mangum proceeded to answer the question. After several questions concerning the witness' training, trial counsel finished his interrogation.

At this point, defense counsel requested an Article 39(a) session, where he moved for a mistrial in light of the earlier question whether appellant had invoked his right to talk to a lawyer. When the military judge asked defense counsel if he had any authority to cite in support of his motion, counsel answered that he would need time to research the point. Observing that it was about time for a lunch break, the military judge recalled the members and recessed the court for about 2 hours.

After lunch, defense counsel argued that he was entitled to a mistrial solely because trial counsel had asked the offending question. Trial counsel conceded that he had erred in asking the question but urged the military judge not to grant a mistrial in response. He explained that he had not intended to violate any of appellant's rights but had simply sought to ask Mangum how he came to terminate the interview. He suggested that any potential prejudice from his blunder could be cured by an appropriate instruction to the members.

Citing *United States v. Pastor*, 8 M.J. 280 (C.M.A. 1980), the military judge concluded that the Government had not engaged in any intentional misconduct; that the question was not designed to inquire directly into appellant's decision to exercise his right to counsel but, rather, was collateral to the main line of questioning; and that, in any event, the error was harmless beyond a reasonable doubt. Accordingly, he denied the motion for a mistrial. He did, however, direct the Government not to further exploit the answer.

When the members returned to the courtroom, he instructed them to disregard the question and its answer, as follows:

Gentlemen, recently, before we broke for lunch, you heard Gunnery Sergeant MANGUM testify that the accused exercised his constitutional rights at a point in his interview with him on the 5th of June. Under our system of law, every citizen does have constitutional rights. Each of us enjoy [sic] these rights, each of you, myself, counsel, and Robert M. GARRETT. All Marines and all Americans, when suspected of crime, which [sic] they are advised of their rights, have, at any time, an absolute right, an absolute right, to exercise their constitutional privileges. That the accused did so in this case must in no way be held against him, nor may you make any inference from the fact that he may have done so. You must each disregard the inquiry of the trial counsel as to what questions the witness asked the accused in this case when the interview was terminated. You must disregard the witness' answer to the trial counsel's question, and the fact that for that matter, the objection as to relevancy by the defense counsel. That too must be disregarded, as must be the court's ruling on the objection, for those things do not matter. What does matter is that the accused always has and had, on the 5th of June, a right to exercise his constitutional prerogatives, and no adverse result may obtain from his exercise of those constitutional rights. You may not infer guilt or any other fact from his exercise of these constitutional rights. The court cannot be too emphatic on giving you this instruction.

Following this instruction, the military judge conducted a brief individual voir dire to inquire as to the members' understanding of his instruction and their ability to follow it. Finally, the military judge renewed his instruction on this same subject when he charged the members prior to their deliberation on findings.

**B**

As is well accepted, "[a] mistrial ... is a drastic remedy," to be "granted only"

when manifestly necessary "to preserve the ends of ... justice." *United States v. Jeanbaptiste*, 5 M.J. 374, 376 (C.M.A. 1978). Recognizing that it was error for trial counsel to inquire whether appellant had sought counsel during the interview, *United States v. Fitzpatrick*, 14 M.J. 394 (C.M.A. 1983); *United States v. Moore*, 1 M.J. 390 (C.M.A. 1976), we must determine whether the error committed by trial counsel is so outrageous as to require that the proceedings be terminated or whether, on the other hand, an instruction by the military judge can cure the error. *United States v. Williams*, 523 F.2d 1203 (5th Cir. 1975); *see United States v. Morris*, 13 M.J. 297, 301 (C.M.A. 1982) (Everett, C.J., concurring in the result); *United States v. Pastor, supra*.

Here, the military judge recognized the potential prejudice from the question, but he appropriately examined it in context in evaluating that potential. He noted that the question had been asked only collaterally to a permissible line of questioning, not in a deliberate attempt to elicit improper information. Moreover, he expressly found that the error was harmless beyond a reasonable doubt. Even then, however, immediately upon the members' return from lunch, he instructed them in rather forceful terms to disregard the question and the answer thereto and specifically questioned the members on their understanding of that instruction and their ability to follow it. Finally, he repeated his curative instruction just before sending the members out to determine appellant's guilt.

This Court has consistently held that, in the absence of clear and convincing evidence to the contrary, members are presumed to follow their instructions. *E.g., United States v. Ricketts*, 1 M.J. 78 (C.M.A. 1975). Such instructions are curative, not reinforcing, unless such extraordinary circumstances exist that there simply is no alternative to terminating the trial. *Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978); see *United States v. Morris, supra* at 302 (Cook, J., concurring in the result).

■ Under the circumstances of this case, we conclude that the military judge appropriately handled the unforeseen problem arising from trial counsel's examination of Mangum. We are convinced beyond a reasonable doubt[5] that any possible prejudice from the question and answer did not linger beyond the military judge's twice-expressed instructions.

### III

One final matter merits some mention in light of the provision in Article 52(b)(2), UCMJ, 10 U.S.C. § 852(b)(2), that "[n]o person may be sentenced to life imprisonment ... except by" a three-fourth's vote of the members. In the first trial, after appellant's conviction of felony-murder by a two-third's vote, see Art. 52(a)(2), defense counsel asked if a three-fourth's vote was required on sentence since a life sentence was mandatory. See Art. 118, UCMJ, 10 U.S.C. § 918. The judge said it was not. Later, the judge noted that paragraph 76b(2), Manual for Courts-Martial, United States, 1969 (Revised edition), provided that "[a]ny sentence, even in a case where the punishment is mandatory, must have the concurrence of the required number of members." However, based on *United States v. Morphis*, 7 U.S.C.M.A. 748, 752–54, 23 C.M.R. 212, 216–18 (1957); and *United States v. Walker*, 7 U.S.C.M.A. 669, 673–75, 23 C.M.R. 133, 137–39 (1957), the judge concluded that the members need not vote on the confinement-for-life portion of the sentence because it was mandatory in light of the findings, although they were reached by only a two-third's vote. Defense counsel then formally objected to the voting instructions, but they were given anyway. Subsequently, the President announced that appellant was sentenced to confinement for life and, with "two-thirds of the members concurring" (seven out of

---

5. See *United States v. Ward*, 1 M.J. 176, 180 (C.M.A. 1975); accord *United States v. Remai*,

19 M.J. 229 (C.M.A. 1985).

ten), to dishonorable discharge, total forfeitures, and reduction.

At the rehearing, the defense requested that the judge instruct that three-fourths of the members had to concur in order to find the accused guilty of felony-murder "because the only possible sentence which may result is ... life imprisonment." This request was denied. See app. exs. XII and XIII in volume IX of the Record. Appellant again was convicted of felony-murder by a two-third's vote (six of nine members). The members then were advised that confinement for life was mandatory, and so they would "not sentence the accused as to confinement at hard labor, as the Congress has removed that option from your consideration." They were told, however, that they still had to "announce that portion of the sentence along with the other aspects of the sentence which you will determine. The remaining punishment alternatives remain to be decided by yourselves." The sentence instructions were to the same effect. In due course, the President announced that "two-thirds of the members present" sentenced appellant to confinement for life, reduction, total forfeitures, and a dishonorable discharge.

It is open to question whether the procedure followed at either hearing was proper. Long ago, this Court decided that the President, through the Manual, "may place an additional burden upon the ... [military judge] and the president of courts-martial not expressly imposed by the Code, but [which] ... is not prohibited by the Code." *United States v. Lucas*, 1 U.S.C.M.A. 19, 22, 1 C.M.R. 19, 22 (1951). It seems possible, though, that the voting requirement in paragraph 76b(2) of the 1969 Manual might on occasion conflict with the Code's mandatory life imprisonment for felony-murder——e.g, if three-fourths of the members refused to vote for a sentence which included life imprisonment.

In any event, no issue in this connection was raised by defense on appeal, so we need not address this question any further.

IV

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge COX concurs.

Judge SULLIVAN did not participate.