**UNITED STATES**

v.

**Airman Stephen K. ENGLAND, FR 022– 66–3555, United States Air Force.**

**ACM 28276.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 21 Nov. 1989.

Decided 25 May 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Richard W. Aldrich.

Appellate Counsel for the United States: Colonel Robert E. Giovagnoni; Major Paul H. Blackwell, Jr. and Captain James C. Sinwell.

Before BLOMMERS, KASTL and MURDOCK, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

■ May a military member be tried by court-martial despite the fact that the Government possesses his immunized testimony? Yes—*provided the Government shoulders its heavy burden and proves that its evidence at trial arose completely independent of that immunized testimony. See Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

Applying *Kastigar* and its lineage, we conclude that the military judge did not err in refusing to grant the appellant's motion to dismiss because of such alleged taint.

### Factual Setting

Airman England faced a bench trial general court-martial for using cocaine on divers occasions, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. His conditional pleas of guilty preserve before us his contention that the Government used tainted evidence against him. He was found guilty and sentenced to a bad conduct discharge, confinement for eight months, forfeiture of $460.00 pay per month for eight months, and reduction to airman basic.

In early June 1989, an airman in England's unit died after a drug overdose. This triggered subsequent urinalysis tests. Airman Brister "popped positive" for cocaine use. On 30 June, Brister confessed his use to the Office of Special Investigations (OSI). He also implicated others, including the appellant and an Airman Maish. Hours after the Brister interview, the appellant conceded to the OSI that he had twice used cocaine.

In September 1989, the appellant received testimonial immunity as to Maish's drug use. Captains T and S interviewed him in the Maish investigation under that grant of immunity. In October 1989, the same Captain T served as Government representative at the appellant's Article 32 investigation.

Soon thereafter, personnel at the Office of the Staff Judge Advocate, Ninth Air Force (legal advisor to the general court-martial convening authority), removed Captain T as trial counsel in the appellant's court-martial. He continued to advise the new trial team, however.

### Improper Use of Immunized Testimony?

■ Before us, the appellant argues that:

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY FAILING TO GRANT THE MOTION TO DISMISS BASED ON THE GOVERNMENT'S IMPROPER USE OF IMMUNIZED TESTIMONY.

The military judge made extensive findings. He ruled that the Government had sustained its heavy burden and had affirmatively demonstrated that all of its evidence at trial originated independent of the compelled testimony. The case against the appellant was complete on 30 June 1989. It consisted of two items: (1) appellant's confession to the OSI; and (2) Brister's statement. Nothing learned during the course of England's subsequent immunized interview about Maish was useful in convicting either Maish or the appellant.

We agree with the military judge's findings. We are satisfied that the Government met its affirmative burden to show that its evidence arose from a source completely independent of England's compelled testimony. *See United States v. Gardner*, 22 M.J. 28, 30–31 (C.M.A.1986), citing *Kastigar v. United States*, 406 U.S. 441, 446, 92 S.Ct. 1653, 1657, 32 L.Ed.2d 212 (1972); *see also United States v. Garrett*, 24 M.J. 413, 416 (C.M.A.1987); Healy, *Problems in Immunity for Military Witnesses*, Army Lawyer (Sept. 1986) 21, 27–29.

We are confident the appellant's immunized testimony was never used to improve or perfect the Government's case. On 30 June the following two evidentiary matters were comfortably in Government hands:

1. Brister implicated the appellant; and
2. The appellant confessed.

Suppose that on that date—and until his trial—the appellant maintained silence, despite Government attempts to loosen his tongue with a grant of immunity. One cannot evade the logic of the situation—*all the facts necessary to convict the appellant were in place on 30 June*. There was no Government corporate thumb impermissibly tilting the scales of justice. To the contrary, the Government had ample evidence, independent of any compelled testimony, to convict the appellant.

■ The appellant relies on *United States v. Eastman*, 2 M.J. 417 (A.C.M.R. 1975), as a key to overturning his conviction. He argues that *Eastman* mandated certain rules for prosecutors. In contrast to that mandate, he insists, the Government blundered badly. It neither quarantined the compelled testimony from England's court-martial nor sealed that testimony away from its prosecutorial arm.

We are not entirely comfortable with *Eastman*, an early effort to apply *Kastigar* in a military setting. Its strictures for erecting a "Chinese wall" for Army staff judge advocates, prosecutors, Article 32 officers, and other legal personnel, while perhaps advisable, may go beyond what is absolutely necessary. *Eastman* has only been cited in one other opinion, to the best of our knowledge. That was a passing reference in *United States v. Tucker*, 20 M.J. 602 (N.M.C.M.R.1985). Our Navy–Marine Corps brethren there compared *Eastman*, without comment, to this Court's decision in *United States v. Gardner*, 18 M.J. 612 (A.F.C.M.R.1984), *aff'd.* at 22 M.J. 28 (C.M.A.1986).

Whatever the validity of *Eastman*, we consider the guidance of the Court of Military Appeals in *Gardner* binding. There, the Court found no fatal blemish by partic-

ipation of a member of the prosecution in obtaining the appellant's immunized testimony. We also believe *Gardner* echoes recent Federal civilian court analysis. *See, e.g., United States v. Serrano*, 870 F.2d 1, 15, 17 (1st Cir.1989); *United States v. Gallo*, 863 F.2d 185, 190 (2d Cir.1988); *United States v. Friedrick*, 842 F.2d 382, 394–395 (D.C.Cir.1988).

### A Caveat for Practitioners

From our vantage point, we can occasionally serve the field by cautioning those responsible for military justice as to some of the bogeymen lurking.* This is such a case.

■ We make the following observations. First, this appeal could have been minimized if the immunized data had been screened from the trial team. Second, ideally, all the data should have been catalogued or sealed so as to provide a clear, sanitized paper trail. *United States v. Boyd*, 27 M.J. 82, 85 (C.M.A.1988) and cases cited; DA Pam 27–22 *Evidence*, para. 24–2c(4)(d) (15 July 1987). Third, Captain T should have recused himself from all contact with the new prosecutors so as to preclude any supposition that the trial may have been flawed by the use of immunized testimony.

The findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge MURDOCK concurs.

Senior Judge BLOMMERS absent.

---

* One successful staff judge advocate keeps a folder entitled "Let's Not Do *That* Again," which is required reading for all newcomers. We consider it a wise practice to minimize errors.